[No. 8190.    Department Two.    November 24, 1909.]

## L. A. Gasaway, *Respondent*, v. H. J. Thomas, *Appellant*.[1]

Fixtures—Definition. Whether an article, once a chattel, has become a fixture, depends (1) upon actual annexation to the realty, (2) application to the use to which that part of the realty is appropriated, and (3) the intention of the.parties to make permanent accession to the freehold.

Fixtures—What Law Governs. Upon a question as to fixtures on land in British Columbia, the law of that province governs.

Evidence—Laws of Another Country—Expert Evidence—Fixtures. The opinion of a barrister in British Columbia that certain machinery on mining property was a fixture in that province, is not controlling where he did not testify to any statute or judicial decision, especially where he erroneously assumed that the machinery was used in working a mine, and where, from decisions cited, it should be presumed that the general rule there was the same as our own.

Fixtures—Mining Machinery—Installed by Purchaser for Prospecting. Mining machinery installed by a purchaser under a contract whereby he was to pay annual installments, and to take possession and prosecute a certain amount of development work, remains personal property which he can remove on forfeiting the contract before surrendering possession, where it appears from the purchaser's testimony that the machinery, a hoisting engine and boiler, were installed for the sole purpose of prospecting the claims and to determine their value, and were not suitable for working the mines.

Appeal from a judgment of the superior court for King county, Frater, J., entered February 6, 1909, upon findings in favor of the plaintiff, in an action in tort, after a trial before the court without a jury. Affirmed.

*William Parmerlee*, for appellant.

*S. G. Murray*, for respondent.

[1]Reported in 105 Pac. 168.

RUDKIN, C. J.—This was an action to recover damages for the conversion of a hoisting engine, air compressor, steam boiler, and other appliances used in the development of certain mining claims. The material facts are as follows: On the 4th day of November, 1905, the defendant Thomas, and other persons associated with him, entered into a contract with one Carter for the sale of certain mining claims, in the Sayward Mining District, in the Province of British Columbia, Dominion of Canada, for which the purchaser agreed to pay the sum of $10,000 in the manner following: $500 on or before six months, $500 on or before one year, $1,000 on or before two years, and $8,000 on or before three years. It was further agreed that the purchaser should take possession and commence development work on the claims within forty days after the signing of the contract, and should expend at least $1,000 in development work each year during the continuance of the contract, after the first six months; that the purchaser should be entitled to all profits arising from the working of the mines, and that upon his request and the payment of the cost thereof the vendors should obtain a crown patent for the claims. The contract further stipulated that, if the purchaser failed to perform or comply with any of its conditions, all his rights and interest in the claims should be forfeited and at an end.

Carter assigned the contract and all rights thereunder to the plaintiff soon after its execution. The plaintiff took possession of the claims under the contract and performed development work for about two years. During the first year, he sunk a shaft to the depth of 60 feet, performing all the labor by hand. The machinery in controversy was then installed, and during the second year the shaft was sunk about 30 feet deeper. The $1,000 payment falling due on November 4, 1907, was never made, the plaintiff forfeited all rights under his contract, and abandoned the claims. About a week after November 4, 1907, the plaintiff stored

the machinery in controversy on the claims, and thereafter the defendant seized the same and converted it to his own use. The testimony tends to show that the hoisting engine and air compressor were attached to a log about fifteen feet in length, hewed flat on both sides, and that the boiler was set on a stone foundation. A temporary shed, built of shakes on a pole framework, was constructed over the machinery to protect it from the elements. The plaintiff testified that the machinery was installed for the purpose of prospecting the claims, that it was not fit or suitable for any other purpose, and that it was so installed for the sole purpose of prospecting the claims far enough to enable him to determine whether he would be justified in making further payments or expenditures under his contract. On this state of facts, the court found that the machinery at all times remained personal property and gave judgment for its value. From this judgment the defendant has appealed, and the only question presented for our consideration is, Was the machinery a chattel or a fixture?

A fixture is generally defined as an article which was once a chattel, but by physical annexation to the realty has become accessory to and part and parcel thereof. In *Filley v. Christopher*, 39 Wash. 22, 80 Pac. 834, 109 Am. St. 853, it is said:

"The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the parties making the annexation to make permanent accession to the freehold."

But when we come to apply this definition and this criterion to the multifarious facts that arise in the complex affairs of a busy world we are confronted with a difficult task. As well said by the court in *Atchison etc. R. Co. v.*

*Morgan*, 42 Kan. 23, 21 Pac. 809, 16 Am. St. 471, 4 L. R. A. 284:

"It is frequently a difficult and vexatious question to ascertain the dividing line between real and personal property, and to decide upon which side of the line certain property belongs. When we compare a thing at the extremity of one class with a thing at the extremity of the other, the difference is obvious; but when we approach the question of fixtures which is the dividing line between real and personal property there is often great difficulty. The decisions of the courts are apparently as diverse as the peculiarities of the facts in the different cases that are decided; and being largely governed by the particular facts of each case, the citation and examination of decisions often tend to confuse rather than to enlighten the judgment."

The property in controversy had its situs in the Province of British Columbia, and the question before us must be decided with reference to the law of that Province if any competent proof of such law is found in the record. For the purpose of proving the law of British Columbia on the subject of fixtures the appellant offered the deposition of a barrister practicing at Vancouver in that Province. An examination of this deposition and the authorities therein cited convinces us that the law of British Columbia on the subject of fixtures is as unsettled and uncertain as our own. It appears from the testimony of this witness that the question at issue is not controlled by any statute of British Columbia, and that the point has never been directly decided by the courts of that Province; that the courts of British Columbia are bound by the decisions of the supreme court of Canada, and of the judicial committee of the privy council of England; that they are not bound by the decisions of the other English and Canadian courts, but that such decisions are viewed substantially as we view the decisions of the courts of our sister states. The witness expressed the opinion, however, that the machinery in controversy was a fixture, and in support of his conclusion cited the following Canadian

and English cases: *Haggert v. Town of Brampton,* 28 Canada Sup. Ct. 174; *Rogers v. Ontario Bank,* 21 Ont. 416; *Gasco v. Marshall,* 7 Q. B. U. C. 193; *Cleaver v. Culloden,* 14 Q. B. U. C. 491; *Wake v. Hall,* 8 App. Cas. 195; *Cross v. Barnes,* 36 L. T. N. S. 693; *Monti v. Barnes,* 1 K. B. (1901) 205; *Reynolds v. Ashby & Son,* 1 K. B. (1903) 87; *Hobson v. Gorringe,* 1 Ch. Div. (1897) 182.

One of these decisions is from the supreme court of Canada, and one from the judicial committee of the privy council of England. In the former (*Haggert v. Town of Brampton*) it was held that machinery in a manufacturing establishment passed by a mortgage of the freehold, but to show that the law of Canada is practically the same as our own we quote the following, which is quoted with approval in that case:

"There is no doubt that the general maxim of the law is, that what is annexed to the land becomes part of the land, but it is very difficult, if not impossible, to say with precision what constitutes an annexation sufficient for this purpose. It is a question which must depend on the circumstances of each case, and mainly on two circumstances as indicating the intention, viz., the degree of annexation and the object of annexation."

In the second case (*Wake v. Hall*) it was held that certain buildings erected on mining claims remained personal property—a conclusion that does not aid the appellant. An extended review of the other cases would not be profitable, as they do not differ from a like number of cases that might be selected from any other jurisdiction, and are as little in point. In *Gasco v. Marshall,* and *Cleaver v. Culloden,* it was held that certain buildings were a part of the land. In *Rogers v. Ontario Bank* it was held that certain machinery used in working a mine passed by a mortgage of the mine. In *Monti v. Barnes* it was held that certain "dog grates" passed by a mortgage of the freehold. In *Reynolds v. Ashby* it was held that certain machinery in a factory

passed by a mortgage of the factory. In *Hobson v. Gor-ringe*, it was held that a gas engine used to propel a saw-mill passed by a mortgage of the mill. In *Cross v. Barnes*, it was held that portable engines, usually used without be-ing attached or affixed to the land, and only fixed for the purpose of steadying them while in use, and only intended to be used for the temporary purpose of sinking a pit, were fixtures as between mortgagor and mortgagee. It must be conceded that the case last cited is a strong one in favor of appellant, but it was decided by a single judge, and the de-. cision seems to ignore one of the main characteristics of a fixture; namely, that it was intended as a permanent acces-sion to the freehold. If this decision is sound, machinery used in drilling for water, coal, oil, or any purpose, however temporary or transitory, would become a fixture.

The witness called to prove the foreign law did not testify to any statute or judicial decision, but merely expressed an opinion upon a question of general law, where the authorities are conflicting, and where each case is governed by its own peculiar circumstances. Furthermore, the opinion is based upon a state of facts which does not appear in the record, for the witness assumed that the machinery was used in working the mine and not for prospecting purposes only. For these reasons we are constrained to presume that the laws of British Columbia are the same as our own, and to decide the case accordingly. Treating the question as one of general or local law, we approve of the reasoning and conclusion of the supreme court of Oregon in *Alberson v. Elk Creek Min. Co.*, 39 Ore. 552, 65 Pac. 978, where property of a similar nature and installed for a similar purpose was held to be personal property.

The only difference in the two cases lies in the fact that in the Oregon case the purchaser had only an option, while here there was a contract of sale. But inasmuch as the purpose and intent of the party making the annexation is controlling, this difference would not seem to be material. The point is

made that the machinery was removed after the time for making the payment of November 4, 1907, had expired, but we apprehend that if the right of removal existed at all it might be exercised at any time before possession of the claims was surrendered, if, indeed, it might not be removed at any time thereafter. Believing that the question at issue was correctly decided by the court below, its judgment is affirmed.

MOUNT, PARKER, DUNBAR, and CROW, JJ., concur.