MINERAL CREEK MINING CO. v. RAMSEY et al.

(Third Division.    Valdez.    December 13, 1913.)

No. 630.

FIXTURES (§ 4*)—CONTRACTS—MINES AND MINERALS.

Where the plaintiff took an option to buy certain lode mining claims with an agreement to prospect before paying the price, except a small first payment, and put mining machinery on the ground for prospecting, and afterward declined to take the ground, it was held that the machinery was not intended to be and was not in fact a permanent fixture, and might be removed by the plaintiff.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 3, 6; Dec. Dig. § 4.*]

This action is brought to recover the possession of certain machinery and other property placed by plaintiff on the lode mining claims belonging to defendants, near Valdez, Alaska. The case was tried before the court, without a jury.

Plaintiff held an option agreement in writing to purchase the mining claims for the sum of $100,000. Seven thousand five hundred dollars was paid, and default being made in another installment or payment falling due on or about January 25, 1913, the option agreement was terminated, and defendants immediately thereupon assumed possession of said mining claims, and plaintiff withdrew from the possession thereof. There remained and still remains provisions, supplies, and other property, conceded to be personal property, upon said mining ground, which defendants in their answer admit be-

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

longs to plaintiff. The undisputed testimony in the case shows this personal property to be of the value of $2,400.

While operating under the said option agreement, plaintiff erected two frame cabins and another frame structure to inclose its hoist and engine, and also placed on said property certain mining machinery, to wit, one drill compressor, with all necessary pipes, fittings, and valves; one 20 horse power engine, with oil and water tanks, pipes, fittings, and valves; two air receivers attached to compressor; one gasoline hoist, with pipes, valves, and fittings and hoisting cable attached to engine; two buckets belonging to hoist.

Ostrander & Donohoe, of Valdez, for plaintiff.

E. E. Ritchie and Charles G. Ganty, both of Valdez, for defendants.

BROWN, District Judge. The question in this case to be determined is whether the machinery and the said cabins and buildings are so annexed to the ground as to become a part thereof and revert to the owners of the ground, the defendants in this case, or whether they are personal property which the plaintiff is entitled to remove.

As to the buildings, the court is satisfied that it was not the intention of the plaintiff to remove them, for one reason which probably is sufficient, to wit, that it would cost as much to remove them as they are worth. I therefore find that such buildings are a part of the realty and belong to the defendants.

As to the machinery, the undisputed testimony shows that the rock was leveled down where the engine, compressor, and other machinery were placed, timbers laid thereon, drift bolts driven through the timbers and into holes drilled in the rock; that the machinery is held and steadied in place by bolts through said timbers, and all that is required to loosen and detach said machinery is to unscrew the nut at the top of said bolts, when said machinery can be removed.

Defendants claim that plaintiff forfeited and abandoned all right to said machinery and made no claim therefor until about August, 1913, about seven months after the forfeiture under said option agreement. The plaintiff disputes this and

showed by testimony that negotiations were pending for a settlement of the question during the summer of 1913; that the plaintiff offered to sell the machinery and other property to defendants, and defendants were considering buying the same.

The testimony of the plaintiff, which is undisputed by defendants, is that said machinery was placed on the property for the sole purpose of prospecting and developing said property; that it was not intended to be used permanently, but to be removed by plaintiff in prospecting and developing other properties after it had served its purpose on the mining claims of defendants.

The old rule with regard to the right to remove fixtures or machinery attached to the soil or to real property, and which depended upon the supposed sacramental character of land, has become greatly relaxed in modern decisions.

In the case of Gasaway v. Thomas, 56 Wash. 77, 105 Pac. 168, 20 Ann. Cas. 1337, it is said:

"The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the parties making the annexation to make a permanent accession to the freehold."

In this case the first two requisites are fulfilled, and as to the third, the intention, it seems clear from the testimony of the plaintiff that said machinery was not placed upon the ground with the intention of making a permanent accession to the ground, but, on the contrary, placed there for the sole and only purpose of prospecting and testing said ground to see whether the plaintiff desired to exercise his option to purchase the said mining claims.

Plaintiff did considerable development work, and expended altogether, in an effort to develop said property, some $30,000 or $40,000, but finally surrendered the said option.

The case of Alberson v. Elk Creek Mining Co., 39 Or. 552, 65 Pac. 978, an Oregon case (decision by Mr. Justice Wolverton), is a case very much in point. In that case, the only testimony cited to show the intention of the optionees in placing the machinery on the mining claims was that one Frank

Davey testified that "the property was placed in position in a temporary manner at the time, in such manner that it could be removed if we decided not to exercise the option"; and on cross-examination said that "the property was put on the mine to assist in getting the ore out, to see if the mine would pay, and to assist in developing the property." The court said:

"There is no stipulation anywhere in the contract that improvements put upon the mine for doing development work in the temporary stage, or while the option remained open, should be forfeited in case the Daveys should not decide to purchase. They were permitted to make such improvements as they might deem necessary to put the mine in a producing condition; but this stipulation, read with the context, has more especial reference to driving tunnels, and the like, in developing the mine, and does not necessarily comprise the instrumentalities by which the work was to be carried on. While the option continued, the Daveys were licensees, coupled with an interest, and their position cannot be assimilated to that of lessees. They were not subject to eviction by the owners, and hence were entitled to remove such fixtures as were placed upon the mine for the temporary purpose of testing its value, and thereby to enable them to determine whether it would be a good business venture to elect to purchase while the option remained open. There was no express agreement or stipulation between the parties that the Daveys might remove such improvements, but we are of the opinion that, under the conditions prevailing, the law implied one."

In the case of Gasaway v. Thomas, supra, a very similar case to the one at bar, the court says, in speaking of a decision apparently adverse to the opinion of the court:

"If this decision is sound, machinery used in drilling for water, coal, oil, or any purpose, however temporary or transitory, would become a fixture."

The court further says:

"Treating the question as one of general or local law, we approve of the reasoning and conclusion of the Supreme Court of Oregon in Alberson v. Elk Creek Gold Mng. Co., 39 Or. 552, 65 Pac. 978, where property of a similar nature and installed for a similar purpose was held to be personal property. The only difference in the two cases lies in the fact that in the Oregon case the purchaser had only an option, while here there was a contract of sale. But, inasmuch as the purpose and intent of the party making the annexation is controlling, this difference would not seem to be material.

4 A.R.—47

The point is made that the machinery was removed after the time for making the payment of November 4, 1907, had expired, but we apprehend that, if the right of removal existed at all, it might be exercised at any time before possession of the claims was surrendered if, indeed, it might not be removed at any time thereafter."

It would seem to be a much safer practice to incorporate, into option agreements like the one in this case, some express provisions concerning the rights of the owner of the ground and the one taking the option, as to the right to remove any machinery placed thereon; but in this case the court is constrained to find from the entire transaction and the testimony of the plaintiff, which is undisputed by defendants, that this machinery was placed on said property merely for the purpose of testing same for mineral and developing and prospecting it, to ascertain whether or not the plaintiff desired to purchase the property.

The court finds the value of the machinery to be the sum of $3,000, and that the plaintiff is entitled, within 60 days from this date, to remove the said machinery from said premises. I will also allow 60 days to remove the said personal property, consisting of provisions and supplies, and that the plaintiff, in the event recovery cannot be had of said provisions, supplies, etc., have judgment against the defendants for the sum of $2,400, the value thereof, and, in case the recovery of said machinery cannot be had, plaintiff have judgment against the defendants for the sum of $3,000, the value thereof; that the buildings placed on said premises by plaintiff are part of the realty and belong to the defendants. Findings, conclusions, and judgment may be entered accordingly.