[No. 29008.   Department One.   June 16, 1943.]

V. I. WHITNEY *et al., Appellants,* v. HUBERT S. HAHN, *Respondent.*[1]

*A. P. Wilson,* for appellant.

*Bigelow & Manier,* for respondent.

JEFFERS, J.—This action was instituted by V. I. Whitney and wife against Hubert S. Hahn, in the superior court for Thurston county, to recover damages in the sum of $825, claimed to have been caused by the removal by defendant of a furnace from a building owned by plaintiffs and rented by defendant on a

[1] Reported in 138 P. (2d) 669.

month to month basis, and also to recover the sum of thirty dollars as rent for the month of April, 1942.

Defendant, by his answer, denied any and all liability claimed to have been caused by the removal of the heating plant, and any and all liability for rent for the month of April, 1942. Defendant alleged affirmatively that he installed a furnace in the building after the expiration of the written lease under which he had formerly held the property in question, and at a time when he was holding the property under an oral agreement, based on a monthly rental. He further alleged that the furnace was installed for the purpose of assisting him in conducting his business, which was that of painting automobiles, and that the furnace was never intended to become a part of the building, and was no part of the improvements or repairs contemplated by the parties when the original written lease was executed, the terms of which plaintiffs alleged were included in the agreement relative to the month to month tenancy.

The matter came on for hearing before the court, which thereafter made and entered findings of fact, conclusions of law, and judgment, favorable to defendant, dismissing plaintiffs' action.

The following facts were entitled to consideration by the court: (We shall hereinafter refer to Mr. Whitney as the sole plaintiff.) On and before June 30, 1936, plaintiff was the owner of an old frame building and the lot upon which it was located, in Montesano, Washington. The building had been vacant for two or more years, and was badly in need of repairs. About this time, plaintiff was approached by defendant in regard to renting the property. We quote from plaintiff's testimony:

"But, anyway, when Mr. Hahn approached me to rent the building, it was in pretty much of a rundown condition, and we entered into an agreement whereby he would make the necessary repairs and alterations.

In other words, I said, 'Go ahead and do whatever you want to to the building.' He did that. Put in some new foundations and new floors and put it in a pretty presentable condition. . . ."

On June 30, 1936, plaintiff, by a written instrument, leased the premises to defendant for the term beginning July 1, 1936, and ending December 31, 1939. The part of the lease which plaintiff claims was carried over and became a part of the oral agreement, to which we shall later refer, is § 3, which provides:

"The lessee hereby accepts the premises as they are and in the condition that they are now in; all changes, alterations, repairs or improvements desired by the tenant shall be at his own cost and expense  The lessee is hereby granted the right to make necessary and convenient changes, alterations or repairs on the said premises at his own cost and expense, *and the same shall remain in the building and become a part of the said premises.*"   (Italics ours.)

The rental was twenty dollars a month for the remainder of 1936, and thirty dollars a month thereafter for the balance of the term.

Defendant took possession of the property, and used it in his business of painting automobiles. There is no question but that defendant expended at least the sum of fourteen hundred dollars in repairing the building and putting it in shape to be used during the term of his lease.

Plaintiff testified that, at about the time the written lease expired, he had a talk with defendant about a new lease, and the result was that they agreed to a lease on a month to month basis, with a five dollar increase in rental, and

" . . . with the understanding and under the same arrangement we had with the written lease. He said, 'I don't know whether I am going to stay.' It was uncertain, but he stayed two or three years."

Defendant purchased the furnace here in question in November, 1939, for $225, but it was not installed until

after the expiration of the written lease. We quote from defendant's testimony:

"The furnace was installed after, approximately a month after the lease had expired, due to the fact I didn't know what sort of arrangements Mr. Whitney would make me, and I wasn't going to install something in there and have to tear it out right away, so I waited until after we had made an agreement on a month to month basis. I bought the furnace previous to the time that the lease expired. I did not install it until after the lease had expired, and we had made an agreement whereby it was satisfactory for me to stay there."

In answer to a direct question as to whether or not, when arrangements were made for defendant to continue in possession on a month to month basis, anything was said about improvements or repairs on the property, defendant answered:

"No, there was nothing said about any improvements on either side. Q. As a matter of fact, were any made? A. No, sir."

There was no basement in the building, and the furnace was installed on the main floor, the pipes running to various parts of the building being held up by wires.

Defendant testified that the furnace was used for drying the paint and heating the shop to dry paints and keep the place warm for his employees. While there were some pipes running to the registers in the ceiling, used to some extent in heating the upper floors where defendant lived, he was not able to use these very much because the spray from the paint would go up through the pipes and gather on the furniture.

While there were three holes cut in the ceiling, where the registers were installed, it is evident that this was not a difficult job, and did not injure the building, as the building was not plastered, and putting in the registers required only the removal of a few boards. Defendant installed the furnace himself.

There was a fire in the building in February, 1942, and as a result the building was not in condition to be used for defendant's business. There was some talk between the parties about repairs, but defendant finally concluded to move out. The understanding was that he was to vacate the building by April 1st, but there is evidence from which it can be reasonably inferred that plaintiff told defendant that if he stayed a few days longer it would not make any difference. Defendant had paid rent to April 1st, and by April 3rd he had removed his effects from the building, including the furnace, but prior to that time had delivered a key to the building to a Mr. Moore, who was plaintiff's foreman.

The trial court concluded that defendant had the right to remove the furnace, as the facts surrounding the installation clearly precluded any idea or intention on the part of defendant to leave it in the premises when he removed therefrom; that there was a meeting of the minds as to the termination of the tenancy on March 31, 1942, and the defendant was not liable for any rent thereafter; and that defendant was entitled to judgment dismissing plaintiff's action.

On December 21, 1942, judgment was entered in accordance with the above conclusions of law. Plaintiff moved for judgment notwithstanding the decision of the court, or in the alternative for a new trial. These motions were denied, and plaintiff has appealed from the judgment entered.

Appellant's only assignment of error is based on the refusal of the court to hold that under the contract the furnace became part of the premises.

It is appellant's contention that the rights of the parties were fixed by the written lease, the terms of which appellant contends were carried over and became a part of the oral agreement. Appellant specifically relies on that part of the written lease which is hereinbefore set out.

To sustain this contention, appellant cites the case of *Gasaway v. Thomas*, 56 Wash. 77, 105 Pac. 168, in which Judge Rudkin, writing the opinion for the court, quoted from the case of *Filley v. Christopher*, 39 Wash. 22, 80 Pac. 834, 109 Am. St. 853, as follows:

" 'The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the parties making the annexation to make permanent accession to the freehold.' "

Appellant also cites the case of *Ballard v. Alaska Theatre Co.*, 93 Wash. 655, 161 Pac. 478, which holds that, as between landlord and tenant, the presumption is that the tenant did not intend to enrich the freehold by annexing fixtures. We are unable to see where the cited cases are of any assistance to appellant.

Appellant then cites *Siegloch v. Iroquois Mining Co.*, 106 Wash. 632, 181 Pac. 51, wherein is found the statement that the term "improvements," as used in the contract involved in the cited case, has a broader signification than that which is usually accorded to the term "fixtures," and that the rights of the parties are to be determined by the meaning of "improvements," rather than by the meaning of the word "fixtures."

Appellant states in his brief:

"The contract [written lease] deals expressly with 'repairs and improvements,' not fixtures. Without extensive 'repairs and improvements' the property would not have served the respondent for the purpose for which he leased it."

The following general statement, found in 22 Am. Jur., p. 749, § 40, is amply supported by case law:

"The element of intention is given especial emphasis in the case of chattels placed on realty by one in possession thereof in the relation of a tenant, and the presumption in such case is that the tenant does not intend to enrich the freehold, but makes such additions for

his own benefit. Furthermore, as between landlord and tenant, in order to favor trade and encourage industry, the greatest latitude is allowed the tenant in removing fixtures. Accordingly, not only do such articles as ordinarily retain their character as chattels remain the property of the tenant, but also some classes of articles which, under other relations, would become a part of the realty, such as those fixtures which have been attached for ornament, for the tenant's own domestic comfort and convenience, or for trade purposes."

In the instant case, the court found the furnace was installed after the expiration of the written lease, and for the purpose of drying the paint on cars upon which respondent was working. In other words, it was installed for the main purpose of assisting him in his trade of painting automobiles.

We do not find that the courts have attempted to limit the term "trade fixtures" to any particular equipment. This question is discussed at some length in the case of *Wiggins Ferry Co. v. Ohio & M. R. Co.*, 142 U. S. 396, 35 L. Ed. 1055, 12 S. Ct. 188, wherein reference is made to the case of *Van Ness v. Pacard*, 2 Pet. (27 U. S.) 137, 7 L. Ed. 374, in which it was held that a house built by a tenant upon land primarily for the purpose of a dairy, and incidentally for a dwelling house for the family, did not pass with the land. The opinion continues:

"The earlier authorities are reviewed in that case by Mr. Justice Story, and the conclusion reached, that whatever is affixed to the land by the lessee for the purpose of trade, whether it be made of brick or wood, is removable at the end of the term. Indeed, it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term."

See our own case of *Ballard v. Alaska Theatre Co.*, *supra*, where we stated that, in determining whether a chattel which has been annexed to the freehold is a

trade fixture or a part of the realty, the cardinal inquiry is into the intent of the party making the annexation.

We are convinced that the judgment entered herein can be sustained either upon the theory that under the facts in this case the furnace was installed as a trade fixture, and as such was removable by respondent at the end of his term, or upon the theory that, conceding that the repairs and improvements referred to in the written lease would include a furnace, the evidence did not establish that the provisions of the written lease became a part of the oral agreement for a month to month tenancy, under which it is admitted respondent was holding at the time he vacated the premises and removed the furnace. There being, then, no express agreement relative to improvements, repairs, or fixtures, it does not seem to us that it would be reasonable to assume that it was the intention of the parties that the furnace was installed as a permanent improvement to the property, when respondent knew that he might be compelled to vacate the premises at any time on a twenty-day notice.

We are also of the opinion that under the evidence the trial court correctly held appellant was not entitled to rent for the month of April, 1942.

For the reasons herein assigned, the judgment of the trial court is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and MALLERY, JJ., concur.