FRED C. KUMRO, Plaintiff, *v.* NEWELL SLATTERY, Defendant.

City Court of Tonawanda, December 12, 1933.

*Alfred W. Mowitz*, for the plaintiff.

*Newell Slattery, pro se.*

HACKETT, J. This is an action to recover the sum of $170 alleged to be owing plaintiff by defendant for rent of certain premises located

at and known as No. 459 Morgan street in the city of Tonawanda, N. Y. Defendant denies the material allegations of the complaint, with certain exceptions, and sets up a separate defense and also a counterclaim hereinafter referred to.

The evidence presented upon the trial discloses the following situation: One Fred Kumro, Sr., was the father of the plaintiff. In his lifetime Fred Kumro, Sr., was the owner of the premises in question. Prior to his death said Fred Kumro, Sr., leased the premises to defendant and defendant rented the same from said Kumro on a month to month basis at a monthly rental of twenty-five dollars per month payable on the first day of each month in advance. Defendant went into possession of the premises and remained in possession down to the time of the death of said Fred Kumro, Sr., which took place in March, 1928, and thereafter continued to remain in possession until about September 9, 1932, when defendant removed from the same. Defendant paid the monthly rental of twenty-five dollars per month to the senior Kumro down to the time of his death, and thereafter paid a like rental to the plaintiff, son of said Fred Kumro, Sr., down to and including October 1, 1931. Plaintiff became the owner of the premises in question upon the death of his father and pursuant to his father's last will and testament heretofore duly admitted to probate. In November, 1931, defendant paid plaintiff fifteen dollars on account of the rent for November, 1931, leaving a balance of ten dollars unpaid. In December, 1931, defendant lost his job. According to defendant, when plaintiff came " up and asked for the rent " defendant told him he had been laid off and did not know how he was going to pay any more rent, and that plaintiff suggested that defendant apply to the city welfare department and advised defendant that, if he did not do so before December 20, 1931, he would not get " December rent." This conversation plaintiff denies. In any event, thereafter plaintiff, according to his testimony, did receive certain payments from or through the city welfare department, viz., ten dollars per month for each of the months of December 1, 1931, to August 1, 1932, both inclusive, and these payments plaintiff credited on the rent of twenty-five dollars per month. There is no dispute between the parties that plaintiff did thus receive monthly payments from the city welfare department, except that defendant testifies that the December, 1931, payment was " eighteen or twenty dollars," and that the January, 1932, payment was for " sixteen sixty-one or sixteen ninety-one." Neither party introduced into evidence the city vouchers which no doubt would have established the correct amount of these two disputed payments. After November, 1931, defendant made no payments to plaintiff for or on account of rent,

except such payments as the city welfare department made or credit given defendant for work performed for plaintiff. Plaintiff did not receive any payment for or upon account of rent becoming due September 1, 1932, from any source. Admittedly defendant occupied the premises until September 10, 1932, when defendant moved from the premises in compliance with a " three day notice." No evidence was introduced by either party showing or tending to show the practice of the welfare department relative to rent payments or contribution, except that it appears to be agreed that defendant was required to sign a " yellow slip " and deliver it to plaintiff who in turn took the same to the welfare department, signed " two vouchers," and then received a check for the amount being paid or contributed. It is upon this state of facts that this action is to be determined.

It will be noted that the record is void of any evidence showing or tending to show any agreement between the plaintiff and the welfare department or city of Tonawanda by virtue of which the department or the city became the tenant or in any respects obligated to plaintiff. The inference is that the welfare department was but contributing some amount monthly to defendant towards the payment of rent as part of its system of welfare relief, making the payments by check direct to plaintiff.

The burden of proving the relation of landlord and tenant ordinarily rests on the party asserting it. If the relationship of landlord and tenant is shown to have been created, the burden of proving its termination rests on the party asserting that fact, for the relationship once established is presumed to continue, within logical limits. (35 C. J. 968; 22 id. 87–92, and many authorities there cited.) Applying these settled rules to the case at bar, it must be held that here defendant had the burden of showing that the relationship of landlord and tenant, unquestionably existing between plaintiff and himself up to November 1, 1931, was terminated on or at some time after that date. This burden defendant failed to meet. There is in the record no evidence from which it can be held that the relationship of landlord and tenant existing between plaintiff and defendant was ever dissolved or terminated prior to the date when defendant removed from the premises. In this connection it may be noted that the plaintiff testified that he never had any agreement to take less than twenty-five dollars per month, and that the defendant, after having testified that in 1928 or 1929 the rent was raised to twenty-seven dollars per month, and that some time in 1929 plaintiff told defendant the rent would again only be twenty-five dollars per month, testified: " After that there was no change. There was never any talk after that. At all times after I knew the

rent was Twenty-five Dollars per month. I knew he was getting what the City was paying. I knew what the City was paying was not Twenty-five Dollars per month. There was no talk about the difference. He seemed to be satisfied to get what the City paid. I told him there is only one thing I can do is get out. He did not say anything. He suggested to me to go to the Welfare. I did. He took the City rent. He never made no agreement to take less." Upon the law and this evidence there can be but one conclusion, viz., that the relationship of landlord and tenant existed between the parties to this action, that such relationship continued at all times until September 10, 1932, when defendant removed from the property, and that the agreed or stipulated rent was twenty-five dollars per month.

There is or can be here no fact adverse to the conclusion last above stated other than the fact that the plaintiff admittedly received certain moneys from or through the city welfare department which the plaintiff credited on the stipulated or agreed rent when and as the same were received. However, there is no evidence of any agreement between the welfare department and/or the city of Tonawanda and the plaintiff whereby the welfare department or the city became the tenant or whereby that department or the city became obligated to pay the plaintiff any rent whatsoever. The relationship of landlord and tenant is always created by contract, express or implied. (35 C. J. 951, 952; *Stern* v. *Equitable Trust Co.,* 238 N. Y. 267; *Beach* v. *Nixon,* 9 id. 35; *Bavendam* v. *Levinson,* 116 Misc. 135; many other authorities.) There exists here no evidence of any express agreement between the city and the plaintiff out of which the relationship of landlord and tenant might arise, nor is there evidence establishing an implied agreement outside of the fact that the city through its welfare department made some monthly payment or contribution. In the face of the fact that the relationship of landlord and tenant clearly was created between the plaintiff and the defendant, that nothing was done by or between the parties to change that relationship, that there was no express agreement between the city and its welfare department and the plaintiff, and that the plaintiff merely applied the moneys received from the city or its welfare department to the agreed or stipulated rent, and in the face of the defendant's own admissions, this court has no recourse other than to hold that the payments made by the city or its welfare department, standing alone, did not create a new relationship or release or discharge the defendant from the relationship into which he apparently voluntarily entered, nor from the obligations arising out of the same.

The defendant by way of counterclaim alleges that he performed

twenty-three hours of labor for the plaintiff, and that this labor was reasonably worth fifty cents per hour, or a total sum of eleven dollars and fifty cents, and for this amount he asks credit. The plaintiff does not appear to dispute that this work was done, and testifies that he did credit the defendant ten dollars therefor. However, the plaintiff does not state when he made this credit and, consequently, there appears to be no evidence from which it can be determined that a proper credit has been given the defendant. The work in question apparently was performed in the month of July, 1932, and plaintiff's complaint appears to indicate only a credit of ten dollars in that month and which amount, according to the evidence, apparently came from the city welfare department. The defendant's counterclaim, therefore, in the amount of eleven dollars and fifty cents, is sustained.

Upon the whole case, therefore, the plaintiff is entitled to recover the sum of $170, the balance of rent owing to him by the defendant, less said counter amount of $11.50, or in all for the sum of $158.50. Plaintiff did not make proof of any interest item of items, and consequently no item of interest is allowed.

In accordance with the views expressed above, judgment has been this day rendered, docketed, entered, and perfected in favor of the plaintiff and against the defendant for the sum of $158.50 damages, together with costs.