THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES, Appellant, *v.* WINTER LEASING COR-
PORATION, Respondent, Impleaded with Others.

JOHN J. CAVANAGH, as Receiver, Respondent.

(Submitted October 1, 1934; decided November 20, 1934.)

*William H. P. Oliver* for appellant.

*Max M. Hirson* and *Max L. Rothenberg* for John J. Cavanagh, as receiver, respondent.

*Jerome T. Nolan* for Winter Leasing Corporation, respondent.

CROUCH, J.   We are called upon to answer the following certified question: " Is the lessee of the mortgaged premises, which are the subject of this action entitled, as against the receiver of rents appointed herein, to collect from sub-tenants of the lessee or from other occupants prior to sale herein, rents payable after the appointment of the receiver? "

The action is to foreclose a first mortgage made in 1923. The defendants Solomon and Goldstein are the owners of the mortgaged premises.   On October 1, 1925, they leased the premises for a period ending September 30, 1946, at an annual net rental of $95,000.   The defendant Winter Leasing Corporation by mesne assignments became the lessee.   Apparently its obligations under the lease grew too burdensome to carry, for under date of January 10, 1933, it entered into an agreement with the owners, which purports to modify and as modified to continue the lease.   A determination of the status and rights of the Winter Leasing Corporation under that agreement will afford an answer to the question certified.

The agreement in substance provides that the annual " rental, income and profits received or derived from said demised premises " shall be " paid out, disbursed or distributed " as follows: The first $23,000 shall be " retained or allowed " to Winter " out of which " Winter " shall pay all repairs and maintenance and all housekeeping and management charges."   The next $82,000, so far as " collected," shall be paid to the owners.   All sums in excess of those two amounts shall at the end of each year be divided equally between the owners and Winter.   If leases are effected through brokers, their commissions are to be paid in addition to the $23,000, and before the owners shall receive anything.   All taxes and assessments (except water charges which are included

in the $23,000) are to be paid by the owners. The agreement then provides that the security deposit under the original lease is assigned to the owners and they are released from any obligation to repay it; and, on the other hand, Winter is released and discharged from all claims arising from any defaults in performance under the terms of the original lease. Finally, all existing or future subleases and all rents due or to become due thereunder are assigned and transferred to the owners as security "for the payment of the amounts above provided for." Except as modified, the original lease is ratified and confirmed.

Less than three months after that agreement was made there was default in the payment of interest and taxes under the mortgage, followed by the commencement of this action and the appointment of a receiver. By the order appointing him, the receiver was authorized to lease any part of the premises and to collect rents from the subtenants; while Winter was restrained from collecting from the subtenants, and the subtenants were restrained from paying such rents to Winter. A motion by Winter to modify the order by striking out those provisions was denied at Special Term, but was granted by the Appellate Division. That court was of the opinion that the case turned upon a determination of the relation between the owners and Winter. If the relation was that of landlord and tenant, it was thought that the receiver had no right to collect the rents from the subtenants; otherwise, if the relation was that of principal and agent.

If we accept the alternative as exclusive and decisive, we are yet disposed to think that as matter of law Winter, under the agreement of January 10, 1933, became merely an operating agent. To say that Winter retained an interest or estate in the premises, seems to us to disregard the substance of the agreement and to give effect to mere characterizations. The original lease is not in the record and all we know of its provisions is that the lessee was

obligated to pay an annual rent of $95,000. The first thing one notes under the new agreement is that Winter is entirely relieved of any obligation to pay rent. Presumably Winter is to make subleases, so called, collect rents and then pay out, disburse or distribute what it collects. But until collection is made, it is under no obligation to pay. That is not conclusive, but it is significant, since the duty is precisely the same as that of an agent. For its activities there is the possibility of reward contingent upon the extent of disbursements made for the specified purposes out of the $23,000, and upon receipts in excess of $105,000. Relieved of all burdens for the future except that of management, it was also released for all defaults in the past in exchange, perhaps, for the surrender of its rights in the money deposited under the original lease. Finally, all the subleases and all rents thereunder are assigned to the owners as " collateral security " for the performance of Winter's sole obligation which is to pay out, disburse and distribute whatever rents are collected. Except that the existing agreement has an historical background in the original lease, nobody reading it would discover in it anything but an agency contract. Whatever is left of the lease is vestigial.

While it is not necessary to decide the point, it may be suggested that the interest of the owners under the collateral assignment is sufficient to enable them to collect and apply all rents. If that be so, then the receiver would step into the shoes of the owners and the rights of Winter, even though he were a lessee, would remain untouched.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division and the question certified answered in the negative.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur; LOUGHRAN, J., not voting.

Ordered accordingly.