OPINION OF THE COURT
Alan Saks, J.
The issue before the court is whether the automatic renewal clause in a contract to supply and service coin-metered laundry equipment to the owner of a building is governed by section 5-903 of the General Obligations Law. If the statute applies, the clause is inoperative in the absence of prior notice by plaintiff to the building owner, calling its attention to the clause. Plaintiff, Dime Laundry Service, Inc. (Dime), is seeking a preliminary injunction restraining defendants from removing its equipment from the laundry room in defendants’ basement and a declaratory judgment that the plaintiff has a lease for said laundry room that remains in effect through December, 1984.
Plaintiff is in the business of supplying and maintaining coin-operated laundry equipment for apartment building laundry rooms. Defendants are the present owner and managing agent of an apartment building. The agreement that is the subject of this lawsuit is titled “Standard Form of Coin-Metered Equipment Lease.” Entered into on December 4, 1978 with a former owner of the building, it
*400 “lease [d] exclusively to the company and assigne[d] for the exclusive use of coin-metered laundry equipment all that cellar space designated for use as the laundry room.” It provided for á term of three years, with an automatic renewal clause for additional three-year periods “unless cancelled by registered written notice by either party at least 60 days prior to the expiration of the original term herein specified.” The building has since been converted to a co-operative and sold to a co-operative corporation.
It is plaintiff’s contention that, not having received notice to the contrary, the agreement was renewed for an additional three-year period pursuant to the automatic renewal clause and is still in effect today.
Defendants charge that the present agreement is unenforceable because they did not receive written notice calling their attention to the automatic renewal clause as required by section 5-903 of the General Obligations Law. Subdivision 2 of that section provides: “2. No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of a contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.”
Defendants admit that they were aware of some laundry room agreement which they agreed to assume, upon the building’s conversion and sale, but contend that the agreement referred to in the co-operative sponsoring plan was with a different laundry company and terminated on December 31, 1982. (It is apparent from the papers before the court that defendants’ present desire to repudiate the *401 agreement with plaintiff is prompted, in part, by their dissatisfaction with the equipment and maintenance provided by Dime.)
Dime does not deny its failure to give notice of the automatic renewal clause, but claims that section 5-903 has no application to this case, since this is not a contract for services but a lease of space.
In construing an instrument, the court looks to the rights it confers and the obligations it imposes to determine its true nature. (New York World-Tel. Corp. v McGoldrick, 298 NY 11,18.) Whether an agreement constitutes a lease and creates a landlord-tenant relationship depends on the intent of the parties and not on their characterization of the agreement. (.Equitable Life Assur. Soc. v Winter Leasing Corp., 265 NY 398.)
Generally, an agreement for the installation and servicing of laundry facilities for the use of tenants of a building creates but a license. (Wash-O-Matie Laundry Co. v 621 Lefferts Ave. Corp., 191 Misc 884; Halpern v Silver, 187 Misc 1023; 1 Rasch, NY Landlord & Tenant, Summary Proceedings, § 76, pp 103-105; see, e.g., Kaypar Corp. v Fosterport Realty Corp., 1 Misc 2d 469, affd 272 App Div 878.) In Kaypar, the court reasoned (p 471) that the “main object of the agreement is to procure for the tenants of defendant a laundering service * * * [A]ll that is granted by the terms of the contract, properly read, is a license to use the designated space for the installation and maintenance of machines. If the occupation of the land is in connection with a service to be rendered to the landlord, then the possession continues to be that of the landlord.”
Essential to a lease is a conveyance of exclusive possession of definite space to the lessee. Despite the “exclusive use” language of the agreement, there is no evidence of sole and exclusive dominion by Dime over the area where its machines were installed. Indicia of exclusivity, such as control over the patrons of the laundry services, control of the keys, or exclusion of other vending machipes or services, are lacking here. (See, e.g., Leibman v Allied Automatic Inds., NYLJ, Sept. 29, 1976, p 16, col 5; cf. Polner v Arling Realty, 194 Misc 598, 194 Misc 831.) In Polner, the court found that the exclusive use language, accompanied *402 by a diagram describing specific identifiable space, evidenced the parties’ intent to create a landlord-tenant relationship. No such intent is found in the Dime agreement. Neither is there anything else which would distinguish the facts here from those in the cases cited above, which hold that an agreement to lease space to provide laundry services is not a lease but a license only. Whether it is a contract for services to or for personal property as defined in section 5-903 of the General Obligations Law must now be decided.
Both the legislative history of section 5-903 and the cases interpreting it require the court to find that it applies to this agreement.
The memorandum of the State Attorney-General sponsoring the bill is instructive as to the purpose of the law and the construction to be given its language.
“This bill would provide that automatic renewal provisions contained in service-type contracts shall be unenforceable by the one furnishing the service unless the recipient of the service is reminded of the presence of the renewal feature by timely notice * * *
“The measure is designed to correct an oppressive situation which has frequently confronted small businessmen who unwittingly find themselves ‘married’ to contracts for sign maintenance, laundry and linen supplies and a variety of other services * * *
“The bill will aid the small businessman who on many occasions in the past has been compelled to continue doing business with a particular company for an extended period of months or years despite dissatisfaction with the cost or quality of the service or the fact that he may no longer require the service.” (NY Legis Ann, 1961, p 52; emphasis added.)
Additionally, the courts have construed the statute broadly, holding that “[t]he words ‘service, maintenance or repair’ in section 5-903 are to be generously read in order that their scope will engage the variegated evil the statute was intended to meet”. (Telephone Secretarial Serv. v Sherman, 28 AD2d 1010, 1011.)
Only one reported case, Leibman v Allied Automatic Inds. (supra), considered section 5-903 in the context of a *403 laundry room agreement. In dictum, the Leibman court found the agreement’s automatic renewal clause within the purview of section 5-903, holding, however, that the “landlord” had waived his right to the statute’s protection by a course of conduct over 13 years.
In light of the foregoing, the court holds that what is called a standard form of coin-metered laundry equipment lease is a contract for services to personal property as contemplated in section 5-903 of the General Obligations Law. Since notice required by the statute was not given, the “lease” expired at the end of its original term and is no longer in effect.
Had the court not held the General Obligations Law controlling, its finding that the agreement was not a lease but a license only would have compelled the same result. A license is a personal, revocable and nonassignable privilege. (1 Rasch, NY Landlord & Tenant, Summary Proceedings, § 71, p 95.) Defendants, not parties to the agreement, were not bound by it (Reliable Washer Serv. v Delmar Assoc., 49 Misc 2d 348), and it was revoked by the subsequent conveyance of the premises. (Kaypar Corp. v Foster-port Realty Corp., supra.)
Plaintiff’s argument, that another section of the General Obligations Law, section 5-905, protects only tenants and not landlords, is irrelevant, since:
(a) Defendants are protected by section 5-903; and
(b) The agreement is not in fact a lease.
Having determined that the plaintiff has no rights under the “lease”, that part of the motion which seeks a preliminary injunction is denied as moot.
Plaintiff is directed and ordered to remove its equipment from defendants’ premises and to restore said premises, including plumbing fixtures, to their prior condition within 20 days after service on plaintiff’s counsel of a copy of this decision and order. Defendants are directed and ordered to grant plaintiff reasonable access for these purposes.