[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant is the owner of three apartment complexes, all located in West Haven, which are known as West Orange Manor, Highland Terrace Apartments and Westgate Apartments. The plaintiff is a supplier of coin-operated washing machines and dryers. Until certain dates in 1989 and 1990, the plaintiff supplied coin-operated washers and dryers to the defendant's three properties. The plaintiff brings this action to recover damages caused by the defendant's alleged breach of the alleged "leases" pursuant to which the plaintiff provided the washers and dryers at the defendant's properties. The defendant caused the machines to be disconnected and removed. The plaintiff also claims damages under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. 42-110a et seq.
At West Orange Manor and Highland Terrace, the "leases" in question were made not with the defendant, but with the prior owner of the properties. The "leases" for these properties provide that they are binding on the owner's successors and assigns and the plaintiff also contends that the defendant knew of the leases when he purchased the apartments. The plaintiff claims that the defendant is therefore bound by the leases despite the fact that they were not recorded in the West Haven Land Records. The defendant disputes having notice of these "leases" prior to his purchase of the properties. He contends that he is not bound by these two "leases" and further, that if CT Page 1882 he were bound by the "leases", the plaintiff breached its obligations thereunder and the defendant was therefore justified in disconnecting the machines.
The threshold issue with respect to the "leases" for West Orange Manor and Highland Terrace is whether they impose any enforceable obligation on the defendant, who acquired the properties after the "leases" were entered into. The West Orange Manor "lease" which plaintiff claims is binding on the defendant is dated December 20, 1988 and has a term of seven years. The defendant purchased West Orange Manor on May 12, 1989. The Highland Terrace "lease" is dated August 1, 1984 and has a term of five years. The defendant purchased Highland Terrace on April 1, 1986. The West Orange Manor "lease" was signed by Philip Wieler as agent for West Orange Manor. Mr. Wieler also signed this "lease" for Clean Corp. as its president. (Mr. Wieler was at one time a 50% owner of Clean Corp.) Nicotra Wieler, Inc. signed the Highland Terrace "lease" on behalf of the owner. It appears that Philip Ryan signed this "lease" on behalf of Clean Corp.
Apparently there is no precedent in Connecticut ruling on the enforceability against a subsequent owner of an apartment building of an unrecorded lease which is for the purpose of providing coin-operated washers and dryers for the benefit of tenants of the building. This issue has been addressed, however, in numerous well-reasoned decisions from New York state, which analyze each such "lease" to determine whether the agreement creates only a license, which is not binding on subsequent owners, or a valid lease granting exclusive possession of specific space, which may be enforceable against subsequent owners.
Generally an agreement for the purpose of installing and servicing laundry facilities for use by tenants of a building creates only a license. Dime Laundry Service v. 230 Apts. Corp.,466 N.Y.S.2d 117, 119 (Sup. 1983), citing Wash-O-Matic Laundry Co. v. 621 Lefferts Ave. Corp., 82 N.Y.S.2d 572, Halpern v. Silver, 65 N.Y.S.2d 336, 1 Rasch, New York Law of Landlord Tenant, 76, "Washing Machine Concessions," pp. 103-105. The reason that such an agreement is generally termed a license is that the essential purpose of the agreement is to obtain laundry services for tenants. Dime Laundry Service, Inc. v. 230 Apartments Corp., supra at 119-120.
In order to have a lease, it is essential that there be a conveyance of exclusive possession of definite space to the lessee. Id. The absence of a grant of exclusive possession of any specific space is a significant factor to be weighed in determining whether the agreement constitutes a lease or a CT Page 1883 license. Reliable Washer Service v. Delmar Associates,267 N.Y.S.2d 419, 421 (1966). Other factors include references in the agreement to the agreement being a lease and expressions in the agreement of the intention of the parties in entering into the agreement. Id. at 420-421.
Although plaintiff has alleged that the agreement for Highland Terrace Apartments is a "written lease Agreement," it quite clearly is not a lease. The agreement is entitled "Contract for Services" and nowhere makes reference to the agreement being a lease. No reference is made to the parties as lessor/lessee or landlord/tenant. There is no grant of possession to the plaintiff of any space in the building. The agreement does provide that any transfer of the property will be subject to the agreement, but states that any such transfer will be "conditioned upon the new owner . . . assuming all the obligations thereof." The plaintiff offered no evidence that the defendant assumed the obligations of the agreement in connection with his purchase of the property. The plaintiff's "Contract for Services" at Highland Terrace is not enforceable against the defendant.
The plaintiffs' agreement for West Orange Manor is quite different in form from the agreement for Highland Terrace. Although the agreement is untitled, it does refer to "West Orange Manor" as "LESSOR" and to the plaintiff as "LESSEE." The operative provision of the one-page agreement reads as follows:
 THE LESSOR hereby grants to THE LESSEE, the sole and exclusive right to install and maintain (coin-operated) automatic Washers and Dryers in the leased space in West Orange Manor, a 120 unit building, located at Sawmill Road, West Haven, CT. THE LESSOR shall not install, nor permit any other person or entity to install, maintain or operate any type of laundry equipment whatsoever on these premises.
A careful reading of this provision reveals that it does not constitute a grant of exclusive possession of a definite space to the plaintiff. What is granted to the plaintiff is the exclusive right to install and maintain the laundry equipment. This equipment will be located in an undefined "leased space" and the owner agrees not to permit any other person to "install, maintain or operate" laundry equipment "on these premises," a reference apparently to the entire 120 unit building. The only evidence that this agreement might be considered a lease is the use of the terms Lessor, Lessee and leased space. Nothing in the remaining provisions of the agreement lends any support to the claim that this agreement constitutes a lease. Rather, the remaining provisions confirm that this is an agreement with the principal CT Page 1884 purpose of securing the right to provide laundry service, not securing exclusive possession of specified real estate. The payment to be made by plaintiff is not termed "rent" and there are no provisions which would be considered standard for inclusion in a lease, for example, a covenant of quiet enjoyment. (The agreement at issue contrasts sharply with the lease defendant later entered into with a different supplier of laundry equipment. These agreements clearly grant possession of designated space, provide for payment of rent and contain other standard lease provisions.)
The West Orange Manor agreement is not a lease which is enforceable against the defendant. The agreement creates at best a license in the property. A license is revocable at any time. State v. Grant, 6 Conn. App. 24, 29 (1986).
The agreement for Westgate Apartments was entered into between the plaintiff and the defendant himself on July 1, 1985 and there is no question of enforceability. The agreement had an original term of two years and was automatically self-renewing for additional two-year terms unless cancelled by notice within ninety days prior to the beginning of a new term. No cancellation notice was given by the defendant.
The defendant caused the plaintiff's laundry equipment to be removed from Westgate on or about March 10, 1990. On March 8, 1990, the defendant wrote to the plaintiff to advise that he would remove the machines on March 10 because of plaintiff's failure to repair a washing machine which had been inoperable since approximately February 23. The washing machine had been seriously vandalized as the result of an apparent robbery attempt. Repair was not possible and a replacement was necessary.
The plaintiff did not immediately replace the washing machine for two reasons. First, it is common in the industry to wait approximately ten days to two weeks to repair or replace a vandalized machine in order to discourage a recurrence of the vandalism. Secondly, although the plaintiff and the defendant had orally renegotiated their agreement some months earlier and plaintiff was now paying the defendant at the higher rate agreed upon, the defendant had failed to sign a new written agreement. The plaintiff was understandably reluctant to incur the expense of providing a new machine without the defendant having signed the new agreement. The plaintiff notified the defendant of this by letter dated February 25, 1990. The defendant did not respond to the request to sign the new agreement.
The plaintiff's obligation under its agreement with defendant was to service and keep the washing machines and dryers CT Page 1885 in good repair and operational. There was no time frame for repair set forth in the agreement. There were two washing machines and two dryers provided at Westgate. Only one machine was vandalized. The laundry room was not kept locked and the defendant was responsible for security at the building. Under all the circumstances here, the Court finds that the plaintiff did not breach its agreement with the defendant by failing to repair the vandalized washing machine on or before March 8, when the defendant notified the plaintiff that he would remove all of the plaintiff's machines. The defendant therefore breached the agreement by disconnecting the plaintiff's equipment on or about March 10.
The plaintiff claims $1483. in damages resulting from the defendant's breach. These damages consist of plaintiff's lost net profits for seventeen months from March 1990 until July 1991, when the contract term would have expired. The plaintiff calculated these lost profits in a reasonable manner, averaging the profits from Westgate for the two years prior to the breach and then deducting expenses based also on an average for the two prior years. A discount to present value is not required because the agreement would have expired in July 1991.
The Court finds no basis for finding a violation of CUTPA. There is no violation of public policy nor any immorality, oppressiveness or unscrupulousness in the defendant's breach of a single contractual agreement.
Judgment is entered for the plaintiff in the amount of $1483., plus costs, on Count Three of the complaint. Judgment is entered for the defendant on the remaining Counts.
Vertefeuille, J.