■ Linro Equipment Corporation, Respondent, v Westage Tower Associates et al., Appellants. [650 NYS2d 399] —Peters, J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from an order of the Supreme Court (Rosato, J.), entered May 24, 1995 in Westchester County, which denied defendants' cross motion to, inter alia, vacate a temporary restraining order.

In 1984, plaintiff entered into a seven-year agreement with

defendant Westage Towers Associates (hereinafter Westage), the sponsor/developer for defendant Westage Towers West Condominium (hereinafter the Condominium),[1] which obligated plaintiff to install and maintain coin-operated laundry machines on each of the 12 floors of the Condominium. In connection therewith, plaintiff agreed to pay a set sum for "rent", with offsets each month which included, *inter alia*, the cash equivalent of the price of one washing and one drying cycle per installed machine per day. It also provided that "[i]f during any three (3) month period, after rent, proceeds do not equal * * * *one cycle* per machine per day, Tenant shall have the right to cancel this lease and to remove the equipment upon thirty (30) days prior written notice". Plaintiff was given the option to renew for an additional seven-year period. In April 1985, after the filing of the declaration and bylaws of the Condominium, Westage was converted to condominium ownership and, thereafter,[2] individual condominiums were sold.

Pursuant to its terms, the agreement commenced on March 1, 1987. By letter dated September 10, 1987, plaintiff notified Parke Rose Management Company, the managing corporation for Westage, that it was exercising its option to renew through March 1, 2001. In January 1989, Parke Rose was replaced by defendant Owen A. Mandeville, Inc. (hereinafter Mandeville) as the new managing agent of the Condominium. Upon inquiry by Mandeville in July 1992 as to the expiration date of this agreement, plaintiff notified Mandeville, by letter dated July 16, 1992, that "the expiration date shall be March 1, 2001".[3]

As a result of a myriad of complaints, Mandeville notified plaintiff that it was terminating the agreement, effective March 1, 1994. In November 1994, plaintiff received a letter from defendant Westage Towers West Condominium Board of Managers (hereinafter the Board) insisting that it remove its laundry machines.

Plaintiff commenced this action in December 1994 seeking, *inter alia*, a declaration that the agreement between itself and Westage was an enforceable lease which was validly extended

---

1. Plaintiff's motion to amend its complaint (to redesignate Westage Towers West, a named defendant in the complaint, as Westage Towers West Condominium and to add Westage Towers West Condominium Board of Managers as a defendant) was stipulated to by defendants and authorized by Supreme Court.

2. In May 1984, Westage filed an offering plan for the establishment of condominium ownership of the property.

3. Mandeville was replaced by defendant Benchmark Management Services, Ltd. as the new managing agent of the Condominium on January 1, 1994.

until March 1, 2001. By order to show cause, plaintiff sought a preliminary injunction pending a hearing and further moved for a temporary restraining order (hereinafter TRO) to prevent defendants from removing the laundry machines or entering into any other commitment for the provision of laundry services during the pendency of the action.

On December 8, 1994 Supreme Court granted the TRO, which prompted a cross motion by defendants to have the TRO vacated and the complaint dismissed. Supreme Court, *inter alia*, refused to vacate the TRO pending a hearing and, further, denied defendants' motion to dismiss, finding a viable issue as to whether defendants had actual or constructive notice of the agreement. Finally, the court determined, as a matter of law, that the subject agreement was a lease and not a license. Defendants now appeal.

Reviewing first whether the agreement constitutes a lease or a license, it has generally been recognized that an agreement of this nature creates only a license (*see, Todd v Krolick*, 96 AD2d 695, *affd* 62 NY2d 836; *Dime Laundry Serv. v 230 Apts. Corp.*, 120 Misc 2d 399; *Kaypar Corp. v Fosterport Realty Corp.*, 1 Misc 2d 469, *affd* 272 App Div 878; *Wash-O-Matic Laundry Co. v 621 Lefferts Ave. Corp.*, 191 Misc 884; *cf., Hi-Rise Laundry Equip. Corp. v Matrix Props.*, 96 AD2d 930), which "confers a personal privilege to do some act or acts on the land without possessing any interest therein" (*Todd v Krolick, supra*, at 696). For the agreement to constitute a lease and thus "create[ ] a landlord-tenant relationship depends on the intent of the parties and not on their characterization of the agreement" (*Dime Laundry Serv. v 230 Apts. Corp., supra*, at 401). To so find, we would have to conclude that, by the terms thereof, plaintiff paid rent "for outright ownership [of a definite space] for the duration of the term" (*Kaypar Corp. v Fosterport Realty Corp., supra*, at 471). Such exclusivity, necessary for the creation of a landlord-tenant relationship, could be indicated by "control over the patrons of the laundry services, control of the keys, or exclusion of other vending machines or services" (*Dime Laundry Serv. v 230 Apts. Corp., supra*, at 401).

Our review of this agreement reveals that, notwithstanding the terminology used, a mere license was created since the essential element of sole and exclusive dominion and control over the designated space was lacking. Plaintiff was required to keep the equipment in good working order and had only limited access to both the building and the laundry area. This agreement is indistinguishable from most other laundry-servicing agreements which create only a license to use a

designated space for the purpose of providing and maintaining a service to the tenants (*see, supra; Kaypar Corp. v Fosterport Realty Corp., supra; Greenbro Coin Meter Corp. v Basch*, 205 Misc 853; *Wash-O-Matic Laundry Co. v 621 Lefferts Ave. Corp., supra; cf., Ritto v Goldberg*, 27 NY2d 887). In so determining the agreement to be a license, which is a "personal, revocable and nonassignable privilege" (*Dime Laundry Serv. v 230 Apts. Corp., supra*, at 403; *see*, Rasch, New York Law of Landlord and Tenant § 71), we further conclude that it was extinguished upon the conveyance of the property (*see, Todd v Krolick, supra*, at 696; *Dime Laundry Serv. v 230 Apts. Corp., supra*, at 403).

However, we do find that plaintiff has raised an issue of fact as to whether the agreement was ratified. We find the placement of the laundry machines since March 1, 1987, a sign in each room indicating that the machines were operated by plaintiff with a listing of a telephone number to call in case of repairs, and the Board's action in continuing to accept rent until February 1994 despite learning of the agreement in January 1989, relevant to whether defendants had actual or constructive notice of the agreement (*see, Holm v C. M. P. Sheet Metal*, 89 AD2d 229, 233). Notwithstanding survival of such issue, we find that Supreme Court erred in rendering injunctive relief since plaintiff can, if necessary, be fully compensated by monetary damages (*see, Pawley v G. H. G. Bldg. Corp.*, 9 AD2d 890, 890-891).

Accordingly, Supreme Court's order must be modified by granting defendants' cross motion to vacate the TRO and declaring that the agreement between the parties was a license.

Cardona, P. J., White, Spain and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' cross motion to vacate the temporary restraining order; cross motion granted to that extent and it is declared that the agreement between the parties is a license; and, as so modified, affirmed.