■ BARBARA A. PAGE, Appellant, v STATE OF NEW YORK et al., Respondents. [902 NYS2d 199]—

Rose, J. Appeal from an order of the Court of Claims (Siegel, J.), entered June 16, 2009, which granted defendants' motion for summary judgment dismissing the claim.

Claimant commenced this negligence action to recover for injuries sustained when she fell while exiting a building owned by defendant State University of New York at Potsdam (hereinafter SUNY) where she was employed as the manager of a commissary operated by Potsdam Auxiliary and College Educational Services, Inc. (hereinafter PACES). As documented by a security video recording, claimant exited the building onto a loading dock, crossed the dock at an angle to her right and, as she stepped onto the left side of a 30-inch-by-10-foot portable ramp leading to the pavement below, her left foot caught on a three-inch curb on the side of the ramp. With her hands full, she lost her balance, stumbled down the ramp and fell at its bottom. The ramp, which had been in use for approximately 10 years,

was intended to cover the underlying stairs when used for deliveries or raised and secured on its side by attachment to a hook installed in the wall of the building. Following discovery, defendants moved for summary judgment dismissing the claim. The Court of Claims granted the motion after finding the evidence sufficient to establish that PACES, rather than SUNY, owned and controlled the ramp, the danger posed by the ramp's curb was open and obvious, no building code was applicable to the ramp, and claimant's fall was the consequence of her own failure to lift the ramp out of the way and use the stairs. Claimant now appeals.

We agree with claimant that the Court of Claims erred in deciding that SUNY was an out-of-possession landlord which cannot be held liable for the danger posed by PACES's ramp. Although an out-of-possession landlord generally will not be held responsible for dangerous conditions on leased premises after possession is transferred to a tenant (*see e.g. Davison v Wiggand*, 259 AD2d 799, 800-801 [1999], *lv denied* 94 NY2d 751 [1999]), the agreement between SUNY and PACES does not establish such a transfer here. The agreement is not termed a lease, it requires PACES to provide food services at various buildings on SUNY's campus and, as for the premises, it only required SUNY to make certain facilities "available" to PACES. The agreement identified those facilities, but did not give PACES sole possession of them. In addition, the agreement expressly required SUNY to keep the specified premises in good repair. As a result, the essential element of a transfer of sole and exclusive dominion and control over the designated spaces in SUNY's buildings is lacking here (*see Karp v Federated Dept. Stores*, 301 AD2d 574, 575 [2003]; *Linro Equip. Corp. v Westage Tower Assoc.*, 233 AD2d 824, 826 [1996]).

We also find merit in claimant's argument that defendants can be held liable for her injuries even though the tripping hazard posed by the ramp's curb was open and obvious. Although the curb was painted yellow and plainly visible, and defendants had no duty to warn of its presence, they failed to establish prima facie that the ramp's protruding curb did not constitute a dangerous condition (*see Bilinski v Bank of Richmondville*, 12 AD3d 911, 911-912 [2004]). Because the ramp did not lie in a straight line from the building's exit, the record could support a finding that a tripping hazard lay in the path of anyone who walked directly from the exit to the ramp. Thus, the question of whether SUNY kept its premises in a reasonably safe condition is for the trier of fact and cannot be resolved as a matter of law (*see MacDonald v City of Schenectady*, 308 AD2d 125, 127-128 [2003]; *Soich v Farone*, 307 AD2d 658, 660 [2003]).

Nor do we agree with defendants that the regulations governing means of egress provided in the New York State Uniform Fire Prevention and Building Code (hereinafter the Code) are inapplicable merely because SUNY's building was constructed before the Code went into effect. We read the former regulations cited by the parties as requiring maintenance of exits and prohibiting the installation of portable or temporary obstructions to egress rather than merely providing construction standards (*see* 9 NYCRR former 1162.2 [a], [f]). In addition, alterations to existing buildings, including the change of a means of egress, were required to comply with the Code (*see* 9 NYCRR former 1231.3 [a]). Given the length of time that the ramp had been in use, the placement of the hook in the adjacent wall and that the curb at the top of the ramp appears to protrude some 12 inches onto the loading dock and to lie in the path between the exit and the ramp, there is a material question of fact as to whether it constituted a code violation (*see Anderson v Creston Assoc., LLC*, 59 AD3d 298, 299 [2009]; *Slomin v Skaarland Constr. Corp.*, 207 AD2d 639, 641 [1994]).

It also was error for the Court of Claims to relieve defendants of liability based upon the disputed evidence that it had been claimant's responsibility to raise the ramp and hook it to the building, making her failure to do so before descending to the lower level the sole proximate cause of her fall. Claimant not only denied that she had been so instructed, but averred that the ramp was necessarily left down because deliveries were coming and going "all the time." Unlike the Court of Claims, we do not view this to be a case where the injuries resulted from the manner in which claimant used the ramp. Rather, the question here is whether the ramp itself posed a danger to those using it (*compare Prairie v Sacandaga Bible Conference Camp*, 252 AD2d 940, 941 [1998], *lv denied* 92 NY2d 816 [1998]). Under these circumstances, it cannot be said that, as a matter of law, claimant's failure to remove the ramp was willful and the sole proximate cause of her fall rather than comparative negligence (*see Nash v Fitzgerald*, 14 AD3d 850, 852 [2005]; *Mesick v State of New York*, 118 AD2d 214, 218 [1986], *lv denied* 68 NY2d 611 [1986]). Since comparative negligence is to be determined by the trier of fact (*see Paternoster v Drehmer*, 260 AD2d 867, 869 [1999]), summary judgment should not have been granted on that basis.

Finally, we cannot agree with defendants' contention that there is insufficient evidence to establish that they had notice of the dangerous condition created by the ramp. While there is no evidence that defendants had actual knowledge of the tripping

hazard posed by the ramp's curb, they were also required to establish that the protruding curb of the ramp was not " 'visible and apparent and it [did not] exist for a sufficient length of time prior to the accident to permit defendant[s'] employees to discover and remedy it' " (*Salerno v North Colonie Cent. School Dist.*, 52 AD3d 1145, 1147 [2008], quoting *Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]). Inasmuch as it is undisputed that the ramp had been used for a number of years before claimant fell and its curb was readily visible, defendants failed to demonstrate that, as a matter of law, they did not have constructive notice of the alleged dangerous condition (*see Ennis-Short v Ostapeck*, 68 AD3d 1399, 1400 [2009]).

Accordingly, the Court of Claims should not have granted defendants' motion for summary judgment.

Mercure, J.P., Lahtinen, Kavanagh and Egan Jr., JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.