Benjamin F. Nolan, J.
This is a summary holdover proceeding, brought by Arol Development Corp., petitioner, to obtain possession of Stores Nos. 12, 13 and 14 in the Bronx Terminal Market, from Goodie Brand Packing Corp., respondent. The trial was conducted before this court, without a jury, from June 16 through June 24, 1975. This opinion will include the court’s findings of fact and conclusions of law.
Arol sues as lessee of the city-owned Bronx Terminal Market, under a long-term lease with the City of New York, dated, May 1, 1972, and, under a long-term amended lease with the City of New York, dated, November 26, 1973, under which Arol became lessee of substantially all of the Bronx Terminal Market, subject to existing tenancies, and under which Arol was assigned "all leases, permits or other agreements for occupancy.”
Goodie is a month-to-month tenant, holding over after the expiration of an occupancy permit agreement it had with the City of New York from September 1, 1970, to August 31, 1971, which was extended to August 31, 1972, but never formally renewed, and which this court concludes, infra, is, in essence, a lease.
Although Goodie has argued that it is not a month-to-month tenant, the facts clearly demonstrate that it is. Goodie held over after the expiration of its lease and thereafter paid monthly rent to Arol. (Real Property Law, § 232-c.) Furthermore, in a writing, dated June 12, 1973, Goodie admitted to being a "month-to-month tenant” of Arol, and further admitted that such tenancy was "terminable at any time.”
*479 Goodie has contended that its occupancy agreement with the City of New York was a permit, not a lease, because it was entitled “Occupancy Permit” and referred to the City of New York as permittor and Goodie as permittee.
Whether a document is a lease must be determined by its terms. (Rochester Poster Adv. Co. v State of New York, 27 Misc 2d 99, affd 15 AD2d 632, affd 11 NY2d 1036; Kumro v Slattery, 150 Misc 269; Equitable Life Assur. Soc. of U. S. v Winter Leasing Corp., 265 NY 398.)
In Miller v City of New York (15 NY2d 34), the City of New York purported to enter into a "permit” or "license” with an occupant of real property owned by the City of New York. The city argued that the document was not a lease, but the Court of Appeals disagreed, holding that the document was a "lease” regardless of what it was entitled. To the same effect was the holding in Skolnik v Utica Shell Serv. Center (81 Misc 2d 417), where a document, in which the parties were referred to as "franchisor” and "franchisee”, was found to really reflect a contractual relationship of "lessor” and "lessee”.
Here — the "occupancy permit” contains 39 paragraphs, all of which are customarily found in a lease. Accordingly, this court concludes that by its terms the agreement entitled "Occupancy Permit” is in reality a "lease”.
Prior to the opening of trial, this court disposed of the following motions:
1. Arol moved to strike Goodie’s jury demand, because paragraph 31 of Goodie’s expired lease with the City of New York contained a jury waiver; also, because paragraph 33 of the said lease provided that the waiver of the jury trial survives the expiration date of the lease.
Where a tenant holds over without any other or new agreement with his landlord, the law will imply continuance of the tenancy on the same terms and subject to the same covenants as those contained in the original lease. (Rasch, N.Y. Landlord & Tenant Law [2d ed], § 274; Baylies v Ingram, 84 App Div 360, affd 181 NY 518; Scully v Roche, 76 Misc 458; Jamaica Investors v Blacharsh, 193 Misc 949, mot for lv to app den 277 App Div 951.)
Nevertheless — Goodie argues — recent decisions in Avenue Assoc. v Buxbaum, (83 Misc 2d 719) and Shapiro v Marstone Distrs. (40 AD2d 878) have stricken such jury lease waivers. However, neither decision is controlling in these circum *480 stances. The court, itself, in the Avenue Assoc, case, expressly distinguishes its determination from commercial cases. Additionally, that decision is based upon findings in a residential lease of unconscionability and compulsion not present here. Shapiro is also distinguishable from the case here, primarily, because it does not involve the carry-over of a jury lease into a month-to-month tenancy. Furthermore, in Shapiro, the Appellate Division allowed a guarantor’s jury demand to stand despite a jury waiver in a lease because the guarantor (p 878) "was neither the lessor nor lessee”. Here, Goodie was the lessee in the agreement which contained the jury lease waiver.
This court concludes that, except for a proceeding under section 259-c of the Real Property Law — which is not the case here — the jury lease waiver provision will be upheld if the proceeding is grounded in contract — which is the case here. (Birchwood Assoc. v Steigauf, 75 Misc 2d 728; Swinger Realty Corp. v Kizner Imports, 70 Misc 2d 742 [App. Term, 1st Dept, concurring opn. of Justice Lupiano]; Eisenberg v 230 Kent Corp., 229 NYS2d 109; Waterside Holding Corp. v Lask, 233 App Div 456.) See Lera Realty Co. v Rich (273 App Div 913), which was a holdover proceeding to recover commercial space in which the same jury lease waiver as we have here was enforced.
Counsels for Goodie have argued that trial by jury is a constitutional right which cannot be waived. This is not so. The Court of Appeals has ruled that the right to waive even constitutional rights will not be interfered with by the courts. (Matter of Malloy, 278 NY 429, 433.)
In further opposing this motion, Goodie asserts a contention (not raised in its answer) that the City of New York, in assigning to Arol all "permit agreements for occupancy” had, in effect, unconstitutionally delegated to a private entity the power to issue, revoke, transfer or suspend licenses or permits. Since this cannot be done, argues Goodie, Arol could not have become a "permittor” by assignment and therefore could not be a successor to the rights of the City of New York, as permittor, in the agreement containing the jury lease waiver, so as to be able now to demand enforcement of that jury lease waiver against Goodie in this proceeding.
The foregoing contention is patently unsound, because article I, section 1, (g) of the amended lease expressly provides: "Lessee hereby succeeds to all non-governmental (i.e. proprie *481 tary) rights of Lessor with respect to all such liens, permits and agreements for occupancy”.
In this summary proceeding, Arol does not assert a governmental right and could not, for it was assigned no governmental right under the lease or the amended lease. By assignment, however, it did succeed to all proprietary rights of the City of New York to enforce the jury lease waiver against Goodie.
Accordingly, Aral's motion to strike Goodie’s jury demand was stricken. (Continental Mdse. Co. v Harris, 76 NYS2d 613.)
2. Next, Goodie moved to dismiss the petition as jurisdiction-ally defective because the 30-day notice (pursuant to Real Property Law, § 232-a), upon which this summary proceeding relies, had been utilized in an identical proceeding which had earlier been discontinued, without prejudice.
The 30-day notice, served on April 11, 1975, gave notice to Goodie that Goodie’s month-to-month tenancy was to terminate on May 31, 1975, and, that if Goodie did not remove from the premises by May 31, 1975, a summary proceeding would be brought by Arol to recover possession of Goodie’s premises in the Bronx Terminal Market.
Since Goodie did not vacate on or before May 31, 1975, Arol brought a holdover summary proceeding on June 2, 1975, based upon the 30-day notice of April 11, 1975, to recover Goodie’s premises. However, prior to the trial date, thereof, Arol became aware of a jurisdictional defect in the petition and commenced a second summary proceeding based upon the same 30-day notice of April 11, 1975. The petition in the second summary proceeding' (the instant proceeding) was served on June 9, 1975. Subsequently, on June 10, 1975, Arol moved in open court to discontinue the first proceeding, without prejudice, due to the jurisdictional defect. Simultaneously, Goodie cross-moved to dismiss the petition for the same reason. This court granted Aral’s motion to discontinue, without prejudice, and denied Goodie’s cross motion to dismiss.
It is important to note that when Arol moved to discontinue on June 10, 1975, there were two summary proceedings in existence — each alleging service of and relying upon the same 30-day notice of April 11, 1975.
Goodie calls attention to Haberman v Wager (73 Misc 2d 732) and Colavolpe v Williams (77 Misc 2d 430), each of which required a new 30-day notice; but, in each of these proceed *482 ings, the prior proceeding had already been terminated when the second proceeding was commenced — which is not the case here.
In Haberman, the court reasoned that if a new 30-day notice was not served in the second proceeding, the tenant would not know for sure whether landlord still intended to evict him. "Perhaps now” said that court "the landlord would lose interest in evicting tenant. Perhaps the landlord would come to the tenant with an offer of compromise.” Here, however, on June 10, 1975, when both proceedings were still in existence, counsel for Arol discontinued the first proceeding in open court and clearly informed the court and counsel for Goodie, in the presence of Goodie’s principal officers, that Arol intended to proceed with the second proceeding (this proceeding) which was still in existence. Accordingly, the reasoning of Haberman could never be applicable here. And, Haberman is further distinguished because there — unlike here — the first proceeding had terminated before the second had commenced. In Colavolpe, the court merely followed Haberman; but, there too, the case is distinguishable because the first proceeding had terminated before the second proceeding commenced.
Another point which distinguishes Haberman and Colavolpe from the instant case is the fact that the discontinuance of the first proceeding here was for lack of jurisdiction. Arol, in moving to discontinue and Goodie, in moving to dismiss, both alleged lack of jurisdiction. In granting Arol’s motion to discontinue, this court agreed that it lacked jurisdiction. In reality, therefore, the first proceeding never came into existence. How, then, could a proceeding which never came into existence be a bar to a second proceeding? In Ferrandino v Cartelli (12 AD2d 604), the Appellate Division, First Department, said: "In any event defendant should be estopped from claiming the existence of a prior action, where it has been demonstrated that the prior action, on defendant’s objection, was void because of lack of prior service of process. To claim successfully that a prior action is a nullity, and then to assert it bars a subsequent action is a completely inconsistent position.”
While CPLR 3211 (subd [a], par 4) permits the court to make any order in the interests of justice, in the case of a motion to dismiss a prior action pending, the power of the court to make such order derives solely from a motion made by the party against whom both actions are pending at the *483 same time. Although there were two prior actions pending, such cross motion to dismiss was made by Goodie for lack of jurisdiction and not because of a prior action pending under CPLR 3211 (subd [a], par 4).
Finally, on this issue, there is nothing in section 232-a of the Real Property Law which specifically requires that a new 30-day notice must be served under the circumstances before this court on this motion. Accordingly, Goodie’s motion to dismiss this proceeding on grounds that a newer 30-day notice than that served on April 11, 1975 had not been served, was denied.
3. The third motion at the opening of trial was Goodie’s motion to dismiss the petition on grounds that it is defective for failing to spell out the possessory right of petitioner to bring this proceeding, and, for not alleging that it enjoys all rights enjoyed by petitioner’s predecessor.
Section 741 of the Real Property Actions and Proceedings Law requires that the petition set forth the interest of the respondent and the relationship of the respondent to the petitioner. The petition, here, sufficiently complies with section 741 of the Real Property Actions and Proceedings Law by alleging that Arol, the petitioner, is the long-term lessee from the City of New York which is the fee owner; and, is the landlord of Goodie’s premises; and, that Goodie holds over and continues in possession of its premises after expiration of its term.
The said motion was, accordingly, denied.
I
The aforesaid three motions were made on June 16, 1975, as trial was about to begin. Counsel for Goodie requested two days to submit a brief, which the court granted. When trial was resumed on June 19, 1975, the court read into the record its determinations of each of the three motions and then afforded counsels for each party an opportunity to respond on the record. Immediately, thereafter, counsel for Goodie made a new motion to dismiss the petition on grounds that the lease between the City of New York and Arol, dated May 1, 1972, had not been specifically approved by the Board of Estimate, in a separate resolution after May I, 1972. The motion was argued orally on the record and this court reserved decision. *484 Disposition of this motion is treated under separate headings, infra.
II
During trial, Arol moved to strike the equitable defense of retaliatory eviction asserted in Goodie’s answer. In opposition, counsel for Goodie called attention to decisions in which such defense was allowed. However, all of the said decisions were from lower courts outside the City of New York. All involved residential property, and, all were grounded in public policy relating to decent, safe housing, or, the protection of tenants complaining to government about housing violations. No cases were called to the attention of this court (nor did the court find any), involving commercial property, in which the equitable defense of retaliatory eviction was allowed. This may be a tacit recognition of the basic fact that this court does not ordinarily possess equity jurisdiction. While section 743 of the Real Property Actions and Proceedings Law expressly permits the assertion of an equitable defense in a summary proceeding, that section is confined to housing or residential proceedings.
The attitude in this jurisdiction is best exemplified in a learned opinion by Judge Maurice Wahl, Civil Court, New York County, in Lincoln Sq. Apts. v Davis (58 Misc 2d 292, affd 64 Misc 2d 859). In that case — as here — the tenant remained in possession after expiration of a written lease agreement. In that case — as here — tenants alleged in an affirmative defense that the proceeding was instituted solely to punish them for engaging in organizational activities with other tenants to protest exorbitant rental increases; and, that landlord was retaliatory and, therefore, violating the First and Fourteenth Amendments of the United States Constitution by infringing upon tenants’ right to organize and petition, to redress grievances, and to exercise their right to free assembly. Although that case involved residential property, Judge Wahl disallowed the equitable defense of retaliatory eviction, declaring it inapplicable to a summary proceeding, as follows (pp 293-294): "The constitutional issues sought to be raised by respondents are neither applicable nor germane to the issue of a holdover tenancy. * * * This court is an inappropriate forum for the resolution of constitutional issues. The purpose of a summary proceeding is to afford a means of obtaining a swift determination of disputes between landlord and tenant *485 as to the right of possession. (Lex-56th Corp. v Morgan, 24 Misc 2d 48, application den 13 AD2d 912). Respondents admit that they are holdovers, and thus, the petitioner has the right of possession. If the respondents are being deprived of their constitutional rights, then there are appropriate forums for testing that issue — but not in this Court in this limited proceeding.” (Citing — to the same effect— Jakobson v Fischer, NYLJ, Aug 8,1968, p 8, cols 5, 6.)
Counsels for Goodie urged that the Lincoln Sq. decision should be confined to its own particular facts — but, the facts there are almost identical to the facts here, the main difference being that here we are dealing with commercial property.
This court agrees with and will follow the reasoning of Lincoln Sq. Accordingly, Arol’s motion was granted and Goodie’s fourth affirmative defense of retaliatory eviction was stricken by this court during trial.
Ill
Goodie’s answer asserts the following affirmative defenses which Arol contends are inapplicable here because each involves an improper collateral attack upon the standing of Arol to bring this proceeding under the lease and amended lease with the City of New York.
Third defense — that Arol has failed to conform to the mandates of the lease and amended lease.
Fifth defense — that a January 18, 1972, Board of Estimate resolution was still in effect when the Board of Estimate approved the resolutions recited in the lease and amended lease, resulting in a violation of the Agriculture and Markets Law.
Sixth defense — that the return of the powerhouse to the City of New York, pursuant to the amended lease, violated the Agriculture and Markets Law.
Seventh defense — that Arol is in violation of the Agriculture and Markets Law because parts of the Bronx Terminal Market are being used for other than market purposes. Goodie has also moved to dismiss Arol’s petition (as indicated, supra) for failure of the Board of Estimate to approve Arol’s lease of May 1, 1972 in a specific resolution after May 1, 1972. Arol opposes this motion, also, as another improper collateral attack upon its standing under the lease and amended lease.
*486 Regardless of the nature of the summary proceeding, Goodie is estopped from attacking the standing of Arol under the lease and amended lease of the entire Bronx Terminal Market from the City of New York (Tilyou v Reynolds, 108 NY 558; People v Savage, 236 App Div 745; Fergus Motors v Kramer, 72 NYS2d 439, affd 273 App Div 760), unless, Goodie can prove that its rights under the lease or amended lease were terminated by the owner (City of New York). (Despard v Wallbridge, 15 NY 374; Cohen v Carpenter, 128 App Div 862; Drake v Cunningham, 127 App Div 79.)
It is clear that Goodie’s rights were not terminated under the lease or amended lease by the City of New York, as owner. Accordingly, Goodie’s third, fifth, sixth and seventh affirmative defenses are dismissed, and Goodie’s motion to dismiss the petition because of alleged failure of the Board of Estimate to specifically approve the lease after its effective date, is denied —all on the grounds that the said four defenses and the motion are improper collateral attacks upon the standing of Arol under the lease and the amended lease between the City of New York and Arol.
Another ground for dismissing Goodie’s fifth affirmative defense is that no evidence was offered by Goodie at trial in support of it.
With respect to Goodie’s affirmative seventh defense, two of Goodie’s own witnesses testified to uses in the market allegedly outside the scope of general market use, as defined in the Agriculture and Markets Law, but on cross-examination admitted that such uses had been carried on in the market before Arol took over under the lease of May 1, 1972. The evidence offered by Goodie did not support this defense, and this is an additional ground for its dismissal.
IV
As indicated previously herein, Goodie moved at the opening of trial to dismiss Arol’s petition on grounds that the Board of Estimate had not approved the lease between the City of New York and Arol, by a specific resolution after its effective date of May 1, 1972. The court reserved decision on the motion, at that time. While Goodie did not raise this issue, specifically, in its answer, it claims a right to assert it at trial under the "umbrella” of paragraph 26 of its answer. Earlier, in this opinion, this court denied the motion as an improper collateral attack on the standing of Arol to bring this sum *487 mary proceeding. Nevertheless, this court pursues the issue further, under this separate heading, because when all of the Board of Estimate resolutions, referred to in the lease and amended lease are considered cumulatively, it is clear that the Board of Estimate intended to approve both the lease and the amended lease.
On the first page of the lease, the history of the underlying Board of Estimate resolutions is recited. Portions pertinent to this motion are:
1. That Board of Estimate resolution (Cal. 199 of March 9, 1972) (copy attached to the lease) authorized the Administrator of Economic Development to invite sealed bids for a lease of the city-owned Bronx Terminal Market and Powerhouse, upon terms and conditions set forth in said resolution;
2. That, thereafter, the Administrator of Economic Development did invite sealed bids on notice duly published in the City Record, and, thereafter, certified Arol to the Board of Estimate as the successful bidder; and,
3. That, the Board of Estimate resolution (Cal. 376 of April 20, 1972) (copy attached to the lease) approved the acceptance of the Arol bid and authorized the Administrator of Economic Development to enter into such a lease with Arol on behalf of the City of New York.
In substance, the two Board of Estimate resolutions authorized a lease upon terms and conditions set forth in Cal. 199, which are: the period of years, the rent, uses of the premises, real property taxes, severance of lease, mortgage of leasehold, and "Other Terms. Such other terms not inconsistent with the foregoing, as are approved by the Economic Development Administration and are included either in the notice to be published inviting bids or in a form of lease referred to therein and made available for examination by prospective bidders.”
The lease contains all the terms and conditions set forth in Board of Estimate resolution (Cal. 199), and, it is executed by the Administrator of Economic Development on behalf of the City of New York; so that, it follows that the "other terms” in the lease are obviously approved by the Economic Development Administration.
Yet, because the last paragraph of the lease provides, "This lease is subject to approval of the Board of Estimate of the City of New York”, counsels for Goodie contend that another *488 Board of Estimate resolution was required, specifically approving the entire lease after its effective date of May 1, 1972.
Counsels for Arol disagree, and contend that no other subsequent approvals of the lease were needed, since the lease contained the terms set forth and approved in Board of Estimate resolution (Cal. 199), and "other terms” approved by the Administrator of Economic Development when he signed the lease.
It is clear to this court that any doubts about whether the Board of Estimate approved the lease of May 1, 1972, must be considered dispelled by what the Board of Estimate, itself, said in its resolution (Cal. 5 of Oct. 4, 1973), attached to the amendment of the lease, and a certified copy of which was received in evidence.
The opening paragraph of the said resolution reads: "Whereas, pursuant to resolutions adopted by the Board of Estimate on March 9 and April 20, 1972 (Cal. Nos. 199 and 376 respectively), the City, as Lessor, and Arol Development Corp., as Lessee, entered into a Lease (the 'Lease’) dated May 1, 1972 of substantially all of the property known as the Bronx Terminal Market”, and the final paragraph begins: "Resolved, That the Administrator of Economic Development is authorized to execute the accompanying lease amendment, which amends the May 1, 1972 Lease between the City and Arol Development Corporation of the Bronx Terminal Market”.
The approval by the Board of Estimate of the amended lease is not in controversy. Board of Estimate resolution (Cal. 5) clearly approves the amended lease as an amending of the lease of May 1, 1972. How, therefore, can it be seriously contended that the Board of Estimate would approve the amending of a lease if it did not also approve the lease being amended?
It must also be kept in mind that the amended lease, being the most recent of the two lease agreements provides Arol with sufficient standing, in and of itself, to bring this summary proceeding against Goodie, in Arol’s role as successor to the proprietory rights of the City of New York against Goodie.
Accordingly, the motion, previously denied because it involved an improper collateral attack on Arol’s standing under the lease between Arol and the City of New York, is also denied on the further ground that the Board of Estimate did approve the lease of May 1, 1972; and, on the still further *489 ground, that even if there was a defect in the chain of approval by the Board of Estimate of the lease of May 1, 1972, it would not justify dismissal of the petition, since the amended lease, itself, provides Arol with sufficient standing to bring the within summary proceeding against Goodie.
V
. Testimony and documentation offered in evidence by Goodie in support of its defense, portrayed a history of Arol’s introduction into the Bronx Terminal Market and eventual emergence as the choice of the merchants to be its developer. And, further, the history of the continuing controversy between Arol and Goodie — of demands from Arol for increased rent and Goodie’s refusals to pay increases unless Arol gave it a long-term lease — of offers by Arol of alternate space, refused by Goodie as unsuitable without even looking at it. And, there were complaints by Goodie’s principal officers about conditions in the market, about expensive electrical work it had to install, of business allegedly lost because of the lack of a long-term lease — yet, admissions by Goodie that its gross profits had increased every year since Arol became lessee of the Bronx Terminal Market. And, there were Goodie complaints about Arol’s leasing practices, countered by contentions by Arol that such practices were authorized under the lease or amended lease, along with testimony by Arol’s principal officer that half of the merchants in the market already have leases of one, five or more than five-year duration. However, none of the foregoing provided Goodie with a defense, in law, against this summary proceeding.
As Judge Wahl said in Lincoln Sq. Apts. v Davis (supra, p 294) "In order to defeat petitioner’s claim to possession of the premises, respondents must show a superior right of possession. * * * Although the tenants herein have presented a very eloquent and moving expression of their contentions, yet, in law, there is no defense.” Goodie has introduced no evidence showing that it has a right to possession of its premises superior to petitioner’s. It has produced no defense, in law, sufficient to defeat Arol in this proceeding.
Goodie has prospered in the Bronx Terminal Market over the past 15 years, with little or no occupancy protection from either the City of New York or Arol. Goodie’s main difficulty, now, is that it has had to negotiate with Arol from an inferior bargaining position, due to the insecurity of its month-to- *490 month tenancy — an insecurity, however, which did not materialize overnight, but which has remained a constant threat to Goodie’s occupancy for the past three years. Since Arol has indicated, by the bringing of this proceeding, that its plans for the development of the market require Goodie to vacate its premises there, Goodie is aware that only a long-term lease can protect its current or future investments in the business it conducts in the Bronx Terminal Market. While this is the heart of the controversy between Arol and Goodie, it does not alter the essential nature of the controversy involved in this summary holdover proceeding, namely, whether, in law, Arol or Goodie has the superior right to possession of Goodie’s commercial premises in the Bronx Terminal Market.
Before, during and after this trial, this court has extended itself to keep the parties and their counsels in almost constant negotiation towards a possible settlement; and, has even provided breaks in the trial schedule to enable the negotiators to meet with representatives of the Board of Estimate and the Economic Development Administration to explore the suitability of alternate space for Goodie in the market. The encouragement of settlements is one of the goals of a judicial system. (Twentieth Annual Report of NY Judicial Conference, 1975, p 224.) Regretfully, however, a settlement could not be finalized, here.
Arol, having established its right to possession of Goodie’s premises, is entitled to final judgment of possession, with a stay through August 31, 1975.