[No. 42164-6-I. Division One. July 19, 1999.]

MARSH-MCLENNAN BUILDING, INC., *Respondent*, v. STEPHEN G. CLAPP, ET AL., *Appellants*.

*Geoffrey P. Knudsen*, for appellants.

*Vanessa Lee, Cynthia Louise Alderete-Medjo*, and *Marilee C. Erickson* of *Reed McClure*, for respondent.

ELLINGTON, J. — Stephen Clapp leased space in a commercial office building owned by Marsh-McLennan Building, Inc. After the written lease had expired, Clapp became a month-to-month tenant under an oral agreement. When Clapp defaulted on the rent and refused to vacate, Marsh-McLennan instituted unlawful detainer proceedings and ultimately prevailed at trial. On appeal, Clapp argues that

proof of service of the notice of unlawful detainer was inadequate and that the trial court erred in its award of attorney fees to Marsh-McLennan under the terms of the written lease because the default occurred while the oral agreement, which did not provide for attorney fees, was in effect. We find that the affidavits of service of the notice complied with the statutory requirements and were adequate proof of service. We hold that the terms of the written lease, including the attorney fees provision, were made applicable to the oral month-to-month lease by virtue of the holdover provision and by virtue of the general rule that, absent an agreement to the contrary, the terms of the written lease apply to an oral lease commenced after termination of the written lease. Accordingly, we affirm the trial court.

## Facts

Stephen Clapp leased space in a commercial office building owned by Marsh-McLennan. When the written lease expired on January 31, 1997, the parties entered an oral month-to-month lease agreement for an indefinite term. On August 15, 1997, counsel for Marsh-McLennan issued Clapp a "Notice to pay rent or vacate," notifying him that he was in default of the rent payments for the months of January through August, 1997 and that he must either pay the rent or vacate the premises within three days. An affidavit of attempts, filed by a process server from Pacific Northwest Process, Inc., shows that service of the notice on Clapp was attempted at his residence on 40th Avenue West in Seattle. The house was vacant and a neighbor told the process server that Clapp had moved to Issaquah. Personal service was attempted at the Issaquah residence seven times on four different days, but no one was ever home. Service of the notice was also attempted on two occasions at the commercial space Clapp leased. Both times, the process server found the door to the office closed and locked. Accordingly, after the second attempt, the notice was posted on the office door. Additionally, according to an

affidavit of service, the notice to pay rent or vacate was mailed to Clapp at the 40th Avenue West address, the Issaquah address, and the office address. The property manager of the Marsh-McLennan Building filed an affidavit stating that she posted a copy of the three-day notice on the door of the office.

By letter dated August 27, 1997, counsel for Marsh-McLennan again notified Clapp in writing that the month-to-month lease was terminated as of September 30, 1997 and Clapp was directed to vacate the premises. An affidavit of service shows that this letter was mailed to Clapp, by certified mail, return receipt requested, at the three addresses noted above. A process server's affidavit states that a copy of this letter was posted on the door of the office Clapp leased.

As of October 3, 1997, Clapp had not vacated the premises. Marsh-McLennan filed an amended complaint for unlawful detainer against Clapp on October 3. A show cause hearing was held on October 15. The matter went to trial on November 12, 1997. The trial court admitted the notices and affidavits under the business records exception to the hearsay rule. The jury returned a verdict in favor of Marsh-McLennan.

## Discussion

### Proof of service of the notice

The trial court admitted the affidavits of service as reliable third party reports under the business records exception to the hearsay rule, RCW 5.45.020. We see no reason to address the admissibility of the affidavits under the business records exception because we find that under the plain language of RCW 59.12.040, the affidavits are competent proof of service.

■ ■ RCW 59.12.040 sets forth three alternative methods of service of notices issued under the unlawful detainer statutes: (1) by personal delivery; (2) if the person is absent from the premises unlawfully held, then by leav-

ing a copy of the notice at the premises with a person of suitable age and discretion, and mailing a copy to the person at his or her place of residence; or (3) if the person to be notified is a tenant and his or her place of residence is not known or if a person of suitable age and discretion cannot be found there, then by posting a copy of the notice in a conspicuous place on the premises unlawfully held, and also delivering a copy to a person there residing, if such person can be found, and mailing a copy of the notice addressed to the tenant at the place where the premises unlawfully held are situated. RCW 59.12.040. In the present case, service under the third alternative was properly made. That is, the notices were posted in the leased space and mailed to the leased space, Clapp's 40th Avenue West address, and his Issaquah address.[1] Clapp does not argue that he did not receive any or all of the notices.

 Proof of service under the unlawful detainer statutes may be made by affidavit of the person making service "in like manner and with like effect as the proof of service of summons in civil actions." RCW 59.12.040. Proof of service of a summons in a civil action is governed by CR 4(g). Under that rule, proof of service by one other than the sheriff is by the server's affidavit of service endorsed upon or attached to the summons. CR 4(g)(2). Proof of service by mail is by affidavit of the serving party stating that copies of the documents were sent by mail in accordance with the

---

[1]Marsh-McLennan asserts that it strictly complied with the requirements of the notice statute, but that even if it did not strictly comply, it substantially complied and that was enough. The Supreme Court has held that the unlawful detainer statutes are in derogation of common law and must be strictly construed in favor of the tenant. *Housing Auth. v. Terry*, 114 Wn.2d 558, 563, 789 P.2d 745 (1990). It should be noted that earlier cases have distinguished between "time and manner" requirements regarding the institution of an unlawful detainer notice and the "form and content" of the notice. With respect to the former, strict compliance by the landlord is necessary, *Community Investments, Ltd. v. Safeway Stores, Inc*, 36 Wn. App. 34, 37-38, 671 P.2d 289 (1983), while with respect to the latter, substantial compliance is sufficient. *Foisy v. Wyman*, 83 Wn.2d 22, 32, 515 P.2d 160 (1973) (citations omitted). At issue in the present case is the manner of service of the notice of unlawful detainer. Thus, under the foregoing cases, Marsh-McLennan was held to strict compliance with the statute. We therefore reject its claim that substantial compliance with the statutory requirements was sufficient. We find, however, that Marsh-McLennan did in fact strictly comply.

rule, and stating to whom, and when, the envelopes were mailed. CR 4(g)(4).

The record contains an affidavit of a process server showing numerous attempts to serve Clapp personally with the August 15 notice to pay rent or vacate at the 40th Avenue West house. The record also contains an amended affidavit of the administrative assistant to counsel for Marsh-McLennan stating that the August 15 notice was mailed to Clapp on August 21 by United States mail, postage prepaid, at the leased premises, the 40th Avenue West address, and the Issaquah address. Additionally, the property manager stated in an affidavit that she posted the original notice at the leased premises. The record also contains an affidavit attesting to the mailing of the August 27 letter to vacate, this time by certified mail, return receipt requested, to Clapp on August 27 at the three addresses. In addition, another process server attested by affidavit to posting a copy of this letter at the leased premises. Clapp presented no contradictory evidence.

Under the language of RCW 59.12.040 and CR 4(g), these documents are competent evidence of service of both the August 15 and August 27 documents on Clapp. Proofs of service of summons by affidavit prepared under CR 4(g) have been identified as a type of hearsay evidence whose admission has been preserved under ER 802's statement that "[h]earsay is not admissible except as provided by these rules, by other court rules, or by statute." *See* 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 356, at 141 n.1 (3d ed. 1989). Because RCW 59.12.040 adopts the method of proving service in CR 4(g), it follows that the admission of hearsay evidence is permitted under the statute as it is under the court rule. Thus, we conclude that it was not an abuse of the trial court's discretion to admit the affidavits as evidence of service of the notices under the unlawful detainer statutes.[2] We therefore will not disturb the trial court's decision to admit them. *See Reese v. Stroh,*

---

[2]Clapp argues that neither RCW 59.12.040 nor CR 4(g) provide for the use of affidavits to prove matters in dispute at trial, but rather that they are simply

128 Wn.2d 300, 310, 907 P.2d 282 (1995) (a trial court's decision admitting or excluding evidence is reviewed for abuse of discretion, which occurs only when the exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons). Because we find that the affidavits of service are admissible as proof of service under the plain language of RCW 59.12.040, we affirm the trial court's decision to admit the affidavits, without addressing whether they were also admissible under the business records exception to the hearsay rule, RCW 5.45.020. *See Weiss v. Glemp*, 127 Wn.2d 726, 730, 903 P.2d 455 (1995) (an appellate court may sustain a trial court's judgment on any theory established by the pleadings and proof, even if the trial court did not consider it).

Attorney fees

Following trial, the jury found in favor of Marsh-McLennan. The trial court then awarded Marsh-McLennan attorney fees "per lease terms." The relevant lease terms are an attorney fee provision and a holdover provision. The former provides that the tenant is obligated to pay the landlord all costs, including attorney fees, the landlord incurs in connection with a breach or default by the tenant under the lease or in connection with the enforcement or interpretation of the lease. It also provides that the prevailing party in an action for the enforcement or interpretation of the lease is entitled to attorney fees from the losing party, to be incorporated in the final judgment.[3]

Because the lease had expired, Clapp urges its attorney

---

methods of proving service to sustain a court's jurisdiction where service is a pretrial issue. Thus, he argues, "the trier of fact must be presented with and consider live testimony and/or otherwise admissible evidence bearing on the service issue. A hearsay affidavit of service can not prove service *at trial* if its admissibility is subject to an exception." Appellant's Reply Br. at 3. (Emphasis in original.) Clapp cites no authority in support of this argument, nor do we find any. Both the statute and the rule speak in terms of "proof of service" with no limitation to pretrial matters. We will not read into the statute or the court rule language that does not appear on its face or by fair interpretation.

[3]The attorney fee provision reads in its entirety:

Tenant shall pay to Landlord all amounts for costs (including reasonable attorneys' fees) incurred by Landlord in connection with any breach or default

fees provision does not apply. The lease included a holdover provision, which read (in relevant part):

If Tenant holds over after the expiration or earlier termination of the Term hereof with or without the express written consent of Landlord, Tenant shall become a tenant at sufferance only, at a rental rate equal to two hundred percent (200%) of the rent in effect upon the date of such expiration or termination . . ., and otherwise subject to the terms, covenants and conditions herein specified, so far as applicable. Acceptance by Landlord of rent after such expiration or earlier termination shall not constitute a holdover hereunder or result in a renewal.[4]

Clapp argues that he was not subject to the clause of the holdover provision incorporating the terms of the written lease because he was a month-to-month tenant, not a tenant at sufferance, once the written lease expired.

Under the landlord and tenant statutes, a month-to-month tenancy and a tenancy at sufferance are two different things. A month-to-month tenancy occurs "[w]hen premises are rented for an indefinite time, with monthly or

by Tenant under this Lease or incurred in order to enforce or interpret the terms or provisions of this Lease. Such amounts shall be payable upon demand. In addition, if any action shall be instituted by either of the parties hereto for the enforcement or interpretation of any of its rights or remedies under this Lease, the prevailing party shall be entitled to recover from the losing party all costs incurred by the prevailing party in said action and any appeal therefrom, including reasonable attorneys' fees to be fixed by the court therein. Said costs and attorneys' fees shall be included as part of the judgment in any such action. As used herein, the term "prevailing party" shall be the party which by law is entitled to recover its costs of suit, whether or not the action proceeds to final judgment. Further, should Landlord be made a party to any litigation between Tenant and any third party, then Tenant shall pay all costs and attorneys' fees incurred by or imposed upon Landlord in connection with such litigation.

[4]The remainder of the holdover provision reads:

The foregoing provisions of this Paragraph 11 are in addition to and do not affect Landlord's right of re-entry or any rights of Landlord hereunder or as otherwise provided by law. If Tenant fails to surrender the Premises upon the expiration or earlier termination of this Lease, Tenant hereby agrees to indemnify and hold Landlord harmless from all loss or liability, including, without limitation, any claim made by any succeeding tenant founded on or resulting from such failure to surrender. The foregoing obligation of Tenant shall survive the expiration or earlier termination of this Lease.

periodic rent reserved." RCW 59.04.020. Such tenancies are terminated by written notice of at least 30 days. *Id.* A tenancy at sufferance occurs when "any person obtains possession of premises without the consent of the owner." RCW 59.04.050. Such person is liable for reasonable rent for the actual time he or she occupies the premises and must, on demand, surrender possession to the owner. *Id.*

The language of the holdover provision in Clapp's lease mixes these two types of tenancies, by virtue of the "with or without the express written consent of Landlord" language coupled with the "shall become a tenant at sufferance only" language.

The holdover provision could have been written in terms that more clearly and precisely delineate its scope. It is reasonable to conclude, however, that because by definition a tenant at sufferance cannot be one who is holding over with the landlord's consent, the inclusion of the "with or without consent of the Landlord" language in the holdover clause was meant to broaden the scope of the holdover clause to include both tenants at sufferance and month-to-month tenants. Thus it does not follow that the parties intended to limit the meaning of "tenant at sufferance" to its legal meaning. Otherwise, a month-to-month tenant holding over with consent under an oral lease would be subject to no terms or conditions except those to which the parties specifically agree such as, in the present case, the rental amount. The most reasonable interpretation is that the holdover provision governs oral month-to-month tenancies commenced after the expiration of the term of the written lease. Consequently, the terms of the written lease, including the attorney fees provision, apply to such oral month-to-month tenancies.

■ Even in the absence of the language in the holdover provision, the prevailing rule is that the terms of a fixed lease apply to the terms of a holdover tenancy. The Supreme Court of Utah, for example, has called it a "firmly established rule" that

proof of a holding over after the expiration of a fixed term in a

lease gives rise to the presumption, which in the absence of contrary evidence will be controlling, that the holdover tenant continues to be bound by the covenants which were binding upon him during the fixed term.

*Cottonwood Mall Co. v. Sine*, 767 P.2d 499, 503 (Utah 1988).

A New York court has called it a "long-standing general rule" that "a holdover tenancy impliedly continues 'on the same terms and subject to the same covenants as those contained in the original instrument.' " *Tubbs v. Hendrickson*, 88 Misc. 2d 917, 390 N.Y.S.2d 791, 793 (Sup. Ct. 1976) (quoting *City of N.Y. v. Pennsylvania R.R.*, 37 N.Y.2d 298, 333 N.E.2d 361, 372 N.Y.S.2d 56, 58 (1975)). According to the court in *Tubbs*, the logic behind this rule is that "since the parties have continued in the relationship of landlord and tenant it is implied that they intended no change in the conditions of that relationship." *Tubbs*, 390 N.Y.S.2d at 793. Another New York court stated: "Where a tenant holds-over without any other or new agreement with his landlord, the law will imply continuance of the tenancy on the same terms and subject to the same covenants as those contained in the original lease." *Arol Dev. Co. v. Goodie Brand Packing Corp.*, 83 Misc. 2d 477, 372 N.Y.S.2d 324, 327 (Civ. Ct. 1975), *aff'd*, 84 Misc. 2d 493, 378 N.Y.S.2d 231 (Sup. Ct. 1975), *aff'd*, 52 A.D. 2d 538, 382 N.Y.S.2d 215 (1976).

A Texas court has held the same. In *Barragan v. Munoz*, 525 S.W.2d 559, (Tex. Ct. App. 1975), the issue was whether a hold harmless clause in the original, written lease applied to the holdover, month-to-month tenancy so as to bar the tenant's claim against the landlord for damages to his inventory caused by a water leak originating in a portion of the building under the landlord's control and possession. In affirming a directed verdict in favor of the landlord, the court stated the general rule "that proof of holding over after the expiration of a term fixed in the lease gives rise to the presumption that the holdover tenant continues to be bound by the covenants which were binding upon him during the term, in the absence of evidence to the contrary."

*Id.* at 561. Where the landlord and the tenant agree to changes in the expired lease, to be applicable during the holdover period, the tenant remains bound by the remaining, unchanged, covenants contained in the expired lease. *Id.*

A treatise on leases also recognizes this rule: "With some exceptions, the holdover tenancy is on the same terms as those in the preceding lease, except those clearly inapplicable to the holdover term." 2 MILTON R. FRIEDMAN, FRIEDMAN ON LEASES § 18.4, at 1236 (4th ed. 1997).

The WASHINGTON REAL PROPERTY DESKBOOK, however, announces a somewhat different rule:

> When the tenant holds over after the expiration of his term without any permission from his landlord, then of course his possession is wrongful, and the landlord has an action to remove him. But if the tenant pays, and the landlord accepts, rent after expiration, a periodic tenancy results. The correct explanation appears to be that a wholly new tenancy has been formed, just as if the parties had entered into an original general letting. It may well happen that they will carry over some of the provisions of their former lease, but this should occur *only to the extent they somehow manifest an intention to do so and not automatically.*

2 WASHINGTON STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 27.3(3)(b)(iii), at 27-31 (3d ed. 1996) (emphasis added) (citations omitted). To the extent the DESKBOOK suggests that the foregoing is the general rule to be applied in all cases, to the exclusion of the general rule discussed in the cases above, we believe the DESKBOOK has misinterpreted the relevant Washington precedent.

The case cited in the DESKBOOK in support of the last sentence of the passage quoted above is *Whitney v. Hahn*, 18 Wn.2d 198, 138 P.2d 669 (1943). That case involved an action by a landlord to recover damages caused by the tenant's removal, at the end of a month-to-month tenancy, of a furnace from a building owned by the landlord and rented by the tenant. Originally, a written lease governed the tenancy. When that expired, the tenant became a

month-to-month tenant under an oral agreement. The written lease contained a provision giving the tenant the right to make changes, alterations, or repairs to the premises at the tenant's expense, but providing that any such changes, alterations, or repairs were to remain in the building and become part of the premises. The tenant argued that because he did not install or remove the furnace until after the written lease had expired, the terms of the written lease did not apply to him and he was free to remove the furnace.

The court sustained the judgment in favor of the tenant on two grounds. First, the court determined that the tenant had installed the furnace as a trade fixture, to be used in connection with his automotive painting business conducted in the building, and that the tenant had the right to remove the furnace at the end of his tenancy. This rule is based on the principle that recognizes, especially in the case of trade fixtures, that the tenant does not intend to enrich the freehold, but rather makes the additions for his or her own benefit.

The second basis for the court's holding was its conclusion that the evidence did not establish that the provisions of the written lease became a part of the oral agreement for the month-to-month tenancy under which the tenant was holding at the time he removed the furnace. The court concluded:

> There being, then, no express agreement relative to improvements, repairs, or fixtures, it does not seem to us that it would be reasonable to assume that it was the intention of the parties that the furnace was installed as a permanent improvement to the property, when [the tenant] knew that he might be compelled to vacate the premises at any time on a twenty-day notice.

*Whitney*, 18 Wn.2d at 205.

*Whitney* is distinguishable from the present case and does not preclude the application of the general rule in Washington. The presumption that a tenant does not

intend that trade fixtures he or she installs become part of the premises was a weighty factor in the *Whitney* court's decision not to incorporate the terms of the written lease into the oral month-to-month lease in the absence of an express agreement between the parties to that effect. Such presumption is not present here. Moreover, although inartful, the holdover provision in Clapp's lease is fairly read as expressly incorporating the terms of the written lease into the oral lease. The lease in *Whitney* contained no such provision. Thus, the provisions of the written lease between Clapp and Marsh-McLennan applied during Clapp's oral month-to-month tenancy both by virtue of the holdover provision and by virtue of the general rule.

In sum, both under the general rule and *Whitney*, the terms of the written lease applied to Clapp's oral tenancy. Consequently, there was no error in the trial court's award of attorney fees to Marsh-McLennan in its unlawful detainer proceeding pursuant to the attorney fee provision in the written lease.

■■ Clapp also argues that the trial court erred by refusing to give his proposed jury instruction that a tenancy at sufferance is different than a tenancy from month-to-month. There is, however, nothing in the record to suggest that the interpretation of the holdover clause was an issue submitted to the jury for determination. Thus, the definitions of a tenancy at sufferance and a tenancy from month-to-month—definitions relevant only to the holdover clause—were not pertinent to any issue the jury was called upon to decide, and the refusal to give Clapp's instruction was not error. The instruction, standing alone, would have provided the jury no basis for determining the parties' intent in the holdover clause. The Statement of Issues instruction, to which Clapp assigns no error, included no issue related to the holdover clause, nor did Clapp propose any other instructions relating thereto. Clapp does assign error to the court's general verdict form on grounds that it "did not permit the court to know how the jury decided the factual issue of whether any agreement providing for the

recovery of attorneys' fees and costs was incorporated into the month-to-month rental agreement at issue." However, the special verdict form which Clapp proposed would not have accomplished that end, and Clapp objected below neither to the general form, nor to the court's failure to give his proposed special form. Clapp cannot now complain that the court, instead of the jury, resolved the interpretation of the holdover clause.

The trial court's judgment is affirmed.

KENNEDY, C.J., and APPELWICK, J., concur.