

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 NOV 10 AM 9: 33

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| FINANCIAL ASSISTANCE, INC., a Washington Corporation, | ) ) ) | No. 72361-8-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| | ) | |
| v. | ) ) | |
| BYRON SLACK, MICHAEL BUCKNER and MAUREEN BUCKNER, and the marital community composed of MICAHEL BUCKNER and MAUREEN BUCKNER, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| | ) ) | |
| Respondents. | ) | FILED: November 10, 2014 |

SPEARMAN, C.J. — Financial Assistance, a collections agency and assignee under a commercial lease, filed suit to recover back rent from Byron Slack. The trial court denied Financial Assistance's claims and granted an award of attorney fees and costs to Slack. Finding no error, we affirm the judgment.

## FACTS

In the spring of 2004, Michael and Maureen Buckner approached the Hazel Dell Development Company (Hazel Dell) and its principal, Milton Brown, about leasing a commercial space in Vancouver, Washington. Clerk's Papers (CP) at 65. The Buckners negotiated the lease with Hazel Dell's property manager, John Steiger. As a condition to entering the lease, Hazel Dell required

the Buckners to provide an additional signer as security for payment. The Buckners approached their associate, Byron Slack, who agreed to co-sign the lease. The Buckners and Slack signed the lease on April 30, 2004. See, Exhibit (Ex.) 1.

The lease identified the "Lessee" as "Byron C. Slack and Michael and Maurine Buckner, Husband and wife, all jointly and severally...without regard to number or gender." Ex. 1 at 1. Paragraph 3 established a finite lease term of "one (1) year (plus such additional days, if necessary, so that the termination date will be the last day in the last calendar month of the lease term) which lease term shall begin on the 5th day of May, 2004." Ex. 1 at 1. Paragraph 5, Minimum Rental, set forth the amount and terms under which "Lessee" was obligated to pay rent under the lease. Ex. 1 at 1-2. Paragraph 41, Holding Over, provided in relevant part: "In the event the Lessee for any reason shall hold over after the expiration of this Lease, such holding over shall not be deemed to operate as a renewal or extension of this Lease, but shall only create a tenancy from month-to-month based upon the same terms and conditions contained in this Lease . . . ." Ex. 1 at 12.

During the course of the lease, the Buckners made timely rental payments and, when the lease expired in May 2005, they were current in their rent obligation. Upon termination of the lease and, as provided by the holdover provision, the Buckners retained possession of the property and began a month-to-month tenancy. It is undisputed that Slack was neither in possession of the property nor did he pay rent during the holdover tenancy. Neither the Buckners,

2

who had lost contact with Slack, nor Hazel Dell informed Slack that the Buckners had held over. As month-to-month tenants, the Buckners had difficulty paying the rent and by January 2007 had accumulated $4,893.75 in overdue rent. Hazel Dell claimed it mailed notices of past due rent to Slack at the contact address Slack provided in the lease. However, in an unchallenged finding, the trial court concluded that Slack did not receive any notice of the arrearages and was unaware of them.

In January 2007, Hazel Dell asked the Buckners to sign a promissory note for their then-outstanding rent obligation. The promissory note contained a signature block for Slack. The Buckners never presented the promissory note to Slack for signature and, instead, forged his signature on the note before providing it to Hazel Dell. After conveying the promissory note, the Buckners' inability to make the rent payments continued. In August 2007, they terminated the tenancy and vacated the property.

Subsequently, Hazel Dell attempted to collect the amounts owed on the promissory note and the additional rent arrearages from the Buckners, but was unable to locate them. On July 28, 2009, Hazel Dell assigned its right to the delinquent rent payments, which totaled $8,709.12, to Financial Assistance for collection.

In October 2009, Financial Assistance filed suit against Slack and the Buckners to recover the outstanding obligation under the lease.[1] Financial

---

[1] Although the Buckners were named in the complaint, they were never served and it does not appear that Financial Assistance actually sought recovery from them.

Assistance did not seek recovery under the forged promissory note. On June 24, 2013, a one-day bench trial was held before Clark County Superior Court Judge David E. Gregerson.

Before the trial began, Judge Gregerson informed the parties that approximately ten years earlier, before he became a judge, he represented Hazel Dell's principal, Milton Brown, in an action to enforce a commercial lease. VRP at 4. The judge also told the parties that his involvement in the prior litigation would not affect his judgment in the present case, stating: "[i]t doesn't make a difference from my standpoint, but I didn't want the parties to go forward unless they were made aware of that even though [Brown is] not the actual named party since he was the assignor." Verbatim Report of Proceeding (VRP) at 4. The judge allowed the parties time off the record to confer with counsel regarding this disclosure. Financial Assistance's attorney was permitted a recess of over forty minutes to contact its client and its witnesses to inquire into any potential conflict of interest between Judge Gregerson and Financial Assistance or bias arising from the judge's prior involvement in litigation with Brown. When proceedings reconvened, neither Financial Assistance nor Slack objected to Judge Gregerson presiding over the case.

At trial, Slack and Steiger testified about the circumstances surrounding the lease signing, including the one year term and Hazell Dell's requirement that the Buckners provide a co-signer. Financial Assistance also submitted a ledger purporting to track the Buckners' arrearages. See, Ex. 3. The trial court admitted the document, but did not find it credible because it was missing a page and was

4

not corroborated by testimony or evidence regarding the accounting methods or accuracy of the document.

At the end of the trial, the court concluded that Financial Assistance had no legal or equitable basis to recover the claimed arrearages from Slack. The court reasoned:

> When the landlord continued to accept rent from only the Buckners, communicated only with the Buckners, and apparently tried to work out a concession on arrearages (the promissory note) in an effort to keep them as tenants, it did so without a written contract securing the continued security of Mr. Slack's prospective legal liability. . . . If plaintiff's position were taken to its logical conclusion Mr. Slack would be exposed to infinite perpetual liability with no cutoff.

CP at 53-54. Additionally, citing the infirmities with Financial Assistance's ledger, the only evidence offered on the issue of damages, the trial court also concluded that Financial Assistance failed to meet its burden of establishing damages by a preponderance of the evidence. The trial court entered judgment in favor of Slack and awarded him attorney fees and costs pursuant to a prevailing party attorney fee provision in the lease. Financial Assistance appeals.

## DISCUSSION

### Slack's Liability on the Month to Month Tenancy

This case involves a dispute over the legal effect of a holdover provision in a commercial lease agreement. Financial Assistance contends that, pursuant to the holdover provision, Slack is jointly and severally liable with the Buckners for arrearages in the rent accrued during the month-to-month tenancy from June 2005 to August 2007. Slack argues that, notwithstanding the holdover provision, he was liable only during the one-year term provided for in the lease. He

contends that when the lease expired, his obligations thereunder were discharged. We agree with Slack.

The interpretation of an unambiguous lease is a question of law reviewed de novo. Duvall Highlands, LLC v. Elwell, 104 Wn. App. 763, 771 n.18, 19 P.3d 1051 (2001) (citing Carlstrom v. Hanline, 98 Wn. App. 780, 785, 990 P.2d 986 (2000).

It is well established in Washington that a fixed term tenancy expires automatically at the end of the term upon which the parties agree. Our legislature has codified this rule at RCW 59.04.030, which provides: "In all cases where premises are rented for a specified time, by express or implied contract, the tenancy shall be deemed terminated at the end of such specified time."

If a tenant holds over after the expiration of a fixed term lease and pays rent that is accepted by the landlord, a periodic tenancy results based on the frequency of rental payments. Worthington v. Moreland Motor Truck Co., 140 Wash. 528, 532, 250 P. 30, (1926). This periodic tenancy is regarded as a new tenancy, separate from the preceding fixed-term tenancy. Lowman v. Russell, 133 Wash. 10, 11-12, 233 P.9 (1925). However, some of the provisions of the lease may carry over to the periodic tenancy if the parties manifest an intent that they do so. See e.g., Whitney v. Hahn, 18 Wn.2d 198, 200-05, 138 P.2d 669 (1943); Marsh-Mclennan Bldg., Inc. v. Clapp, 96 Wn. App. 636, 644, 980 P.2d 311 (1999).

Our Supreme Court applied these rules in Lowman. In that case, an unlawful detainer action, the appellant tenant had occupied the leased premises

6

under a five year written lease, with rent payable monthly. Id. at 11. Upon

expiration of the five year lease term, the tenant remained in possession of the

property for five months and continued paying rent monthly, as before, which the

landlord accepted. Id. In the sixth month, the landlord provided notice to the

tenant to vacate the premises or face liability for unlawful detainer. Id. The tenant

argued that the landlord's action constituted unlawful eviction because, in his

view, his continuance in possession and payment of rent, which the landlord had

accepted, created a new five year tenancy governed by the original lease

agreement. Id. The Court disagreed, explaining:

> At ... the end of the five-year term ... not only the term ended but
> the tenancy itself, that is, the relation of landlord and tenant
> between the parties, ceased. Thereafter the relation between the
> parties with reference to the occupancy of the premises was fixed
> by their conduct as it occurred from month to month. The fact that
> appellant continued in possession and paid a monthly rental on
> demand in the same amount as the monthly rental theretofore paid
> during the five years did not create a new term for five years....

Id. at 11-12. The Court held that the only remaining relationship between the

parties was a month to month tenancy, governed by their conduct, i.e., the

monthly tender and acceptance of the agreed rent. Id.

We reached a similar conclusion in Carlstrom, 98 Wn. App. at 786-87, in

which a tenant alleged violation of a just cause eviction ordinance, retaliatory

eviction and constructive wrongful eviction. Id. As in Lowman, the tenant argued

that he was entitled, pursuant to a written, fixed term lease, to continued

possession of the leased premises at the time of his eviction. Id. We disagreed,

noting that the written lease agreement expressly provided for a six month lease

7

term, and explaining that the tenancy had terminated automatically at the end of that period. Id. at 787. The landlord was within his rights to evict the tenant after expiration of the six month period. Id.

The parties to the periodic tenancy are defined by possession of the premises and the tender and acceptance of rent, not a prior written agreement. Worthington is instructive on this point. In that case, the defendant, who was not initially party to the lease agreement, took possession of a property when the rightful lessees vacated prior to the expiration of their written lease term. 140 Wash. at 531-32. After the lease term expired, the defendant held over and continued to pay rent, which the landlord accepted. Id. at 532. In consideration of these acts of possession, payment, and acceptance of rent, the Court concluded that the relation between the landlord and defendant after the formal lease expired was a month to month tenancy. Id.

In this case, the written lease agreement expressly defined a term from May 5, 2004 to May 31, 2005. It also provided that holding over "shall not be deemed to operate as a renewal or extension of this Lease, . . ." Ex. 1 at 12. This language created a fixed-term lease, which terminated automatically on the expiration of the term. The parties' obligations under the lease, including Slack's joint and several liability with the Buckners, were discharged on May 31, 2005.

It is undisputed that the Buckners commenced a month to month tenancy when the fixed term tenancy expired. They maintained possession of the property and paid rent, which was accepted by Hazel Dell. This tenancy lasted

8

from June of 2005 to August of 2007. It is undisputed that Slack was neither in possession during this time, nor paying rent.

Financial Assistance contends that, under the holdover provision of the lease, Slack's joint and several liability with the Buckners continued in perpetuity for as long as any of the three co-lessees possessed the premises. However, this interpretation of the contract language plainly conflicts with Washington law. As previously discussed, the parties' liability under the initial lease agreement terminated when the lease term ended–May 31, 2005. The holdover provision expressly disclaimed that holding over constituted a renewal or extension of this obligation. Nor did it create the month-to-month tenancy or define the parties thereto. The holdover provision merely manifested an intent to define the terms and conditions if a holdover occurred. But the terms and conditions are only binding on a party who undertakes to establish a month-to-month tenancy by maintaining possession and by paying or accepting rent.

Here, there is no question but that the only parties to engage in the conduct necessary to create a month to month tenancy are the Buckners and Hazell Dell. There is no evidence that Slack undertook any act that would bind him as a lessee under the month to month tenancy. He never possessed the premises, paid rent, or otherwise availed himself of the premises during the Buckners' month to month tenancy. He had no involvement or communication with the Buckners, his purported co-lessees, for the duration of the month to month tenancy. Nor did he have any contact with Hazel Dell, his purported

9

landlord, who accepted rent payments exclusively from the Buckners and worked only with the Buckners to cure rent arrearages.

We conclude that Slack was not party to the Buckners' month to month tenancy and, therefore, had no contractual obligation to pay rent during this tenancy.[2]

### Judicial Bias

Financial Assistance also argues that the trial court's dismissal of its claims was motivated by bias on the part of the trial judge, which arose from the judge's allegedly contentious attorney-client relationship with Milton Brown, the principal of Hazel Dell, Financial Assistance's assignor. We conclude that Financial Assistance has waived this argument.

A litigant who proceeds to trial without objection knowing of a reason for potential disqualification of the judge waives the objection and cannot challenge the court's qualifications on appeal. State v. Perala, 132 Wn. App. 98, 113, 130 P.3d 852; see also Williams & Mauseth Ins. Brokers, Inc. v. Chapple, 11 Wn. App. 623, 626, 524 P.2d 431 (1974) (a litigant "may not, after learning of grounds for disqualification, proceed with the trial until the court rules adversely to him and then claim the judge is

---

[2] The trial court dismissed Financial Assistance's claims on the grounds that: (1) even if Slack was contractually liable as a co-lessee for the rent arrearages that arose during this period, under the circumstances of this case, equity demanded relief from this obligation; and (2) Financial Assistance failed to establish its claimed damages by preponderance of the evidence. Because we find Slack had no liability in this case, we need not consider whether he was entitled to equitable relief. Our decision also renders moot any claimed error relating to Financial Assistance's proof of damages. See, Kimball v. Otis Elevator Co., 89 Wn. App. 169, 175, 947 P.2d 1275 (1997) (where defendant is found not liable error relating to damages will be harmless).

disqualified") (citing State ex rel LeFebvre v. Clifford, 65 Wash. 313, 118 P. 40 (1911)).

In this case, the trial judge disclosed his relationship to Financial Assistance's assignor before trial and gave the parties and their attorneys nearly an hour to consider any potential conflicts of interest or bias arising from this relationship. At the close of the recess, Financial Assistance offered no objection to the judge's continuing to preside over the trial. On appeal, Financial Assistance contends that the judge's disclosure was incomplete because he "neglected to disclose the details of the relationship and more specifically, the negative aspects of it." Brief of Appellant at 11. But other than the judge's disclosure, which is memorialized in the verbatim report of proceedings, the record is entirely devoid of any evidence bearing on the nature and quality of the relationship between the trial judge and Financial Assistance's principal. Thus, we decline to consider this characterization of the relationship. We conclude that Financial Assistance waived any challenge to the trial court's alleged bias when it proceeded to trial without objection after the trial judge's disclosure.

## Attorney Fees

Slack requests an award of reasonable attorney fees and costs on appeal pursuant to RAP 18.1 and paragraph 47, Attorney's Fees, of the lease, which provides in relevant part: "[i]f either party commences action … in connection with this lease, the prevailing party shall be entitled to

have and recover from the losing party reasonable attorney's fees ...

including cost of appeal." Ex. 1 at 12. Because Slack is the prevailing

party on appeal, we grant his request for an award of attorney fees,

subject to compliance with the requirements of RAP 18.1(d).

Affirmed.

Spearman, C.J.

WE CONCUR:

Appelwick, J.

Becker, J.